1  **FILICE BROWN EASSA & McLEOD LLP**
   SUSAN A. OGDIE (SBN: 050016)
2  TED MECHTENBERG (SBN: 219602)
   1999 Harrison Street, 18th Floor,
3  Oakland, California 94612
   Tel: (510) 444-3131
4  Fax: (510) 839-7940
   sogdie@filicebrown.com
5  tmechtenberg@filicebrown.com

6  Attorneys for Defendant
   HAWKER BEECHCRAFT CORPORATION
7  F/K/A RAYTHEON AIRCRAFT COMPANY

8            **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10            **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 11  JAMES GUTHRIE, TONY DAVIDSON, RONALD ZERANGUE, SAMUEL RESTER, <br> 12  JOHN GRAY, ELMER PAROLINI, WAYNE DUFAULT, and JESSE BEVERLY, JR., <br> 13 <br> 14      Plaintiffs, <br> 15    v. <br> 16  GENERAL ELECTRIC COMPANY, TODD SHIPYARDS CORPORATION, LOCKHEED MARTIN CORPORATION, RAYTHEON <br> 17  AIRCRAFT COMPANY, MCDONNELL DOUGLAS CORPORATION, and DOES 1- <br> 18  300, <br> 19      Defendants. <br> 20 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br> **CASE NO. C07-2542 SI** <br><br> **DEFENDANT HAWKER BEECHCRAFT CORPORATION F/K/A RAYTHEON AIRCRAFT COMPANY'S COMPENDIUM OF LEGAL AUTHORITIES** <br><br> Date:     July 27, 2007 <br> Time:    9:00 a.m. <br> Courtroom:  10 – Honorable Susan Illston <br><br> Complaint filed: May 14, 2007 |

21      Defendant Hawker Beechcraft Corporation f/k/a Raytheon Aircraft Company ("Raytheon")

22  hereby lodges copies of the following legal authorities cited in support of its motion to sever:

23      1.    *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir.1997)

24      2.    *In Re Rezulin Products Liability Litigation*, 168 F.Supp.2d 136 (S.D.N.Y. 2001)

25      3.    *Simmons v. Wyeth Laboratories, Inc.*, 1996 WL 617492 (E.D.Pa. 1996)

26      4.    *Papagiannis v. Pontikis*, 108 F.R.D. 177 (N.D.Ill. 1985)

27      5.    *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547 (W.D.Wis. 1999)

28      6.    *Kenvin v. Newburger, Loeb & Company*, 37 F.R.D. 473 (S.D.N.Y. 1965)

1       7.     *In the Matter of Asbestos II Consolidated Pretrial*, 1989 WL 56181 (N.D.Ill. 1989)

2

3    DATED:  June 19, 2007.                FILICE BROWN EASSA & MCLEOD LLP

4                                 /s/ Ted Mechtenberg

By:_____

                TED MECHTENBERG
                Attorneys for Defendant
                Hawker Beechcraft Corporation f/k/a
                Raytheon Aircraft Company

**DEFENDANT HAWKER BEECHCRAFT CORPORATION F/K/A RAYTHEON AIRCRAFT COMPANY'S COMPENDIUM OF LEGAL AUTHORITIES**
**Case No. C07-2542 SI**

1

**PROOF OF SERVICE**

2

*Jesse Beverly, Jr.  v. General Electric Company et al.*
**United States District Court Northern District of California San Francisco**
**C07-2542 SI**

3

4

I am a citizen of the United States, over 18 years of age and not party to the within

5

action. I am employed in the county of Alameda; my business address is 1999 Harrison

6

Street, 18th Floor, Oakland, CA 94612.

7

On the date listed below, I served the within documents:

8

**DEFENDANT HAWKER BEECHCRAFT CORPORATION F/K/A RAYTHEON AIRCRAFT COMPANY'S COMPENDIUM OF LEGAL AUTHORITIES**

9

on all parties in this action, as addressed below, by causing a true copy thereof to be distributed

10

as follows:

11

**ALL COUNSEL**
**VIA ELECTRONIC COURT FILING (ECF) AND PACER**
**(SEE PLAINTIFF'S SERVICE LIST ATTACHED)**

12

13

☒   **VIA ELECTRONIC SERVICE**

14

I caused a true and correct copy of such document(s) to be electronically served on counsel of record by transmission The U.S. District Court Northern District of California, San Francisco Division via Electronic Court Filing (ECF).

15

16

I declare under penalty of perjury under the laws of the State of California that the

17

foregoing is true and correct.

18

Executed on June 19, 2007, at Oakland, California.

19

20

/s/  Lori D. Tyler

21

_____

22

Lori D. Tyler

23

24

25

26

27

28

**DEFENDANT HAWKER BEECHCRAFT CORPORATION F/K/A RAYTHEON AIRCRAFT COMPANY'S**
**COMPENDIUM OF LEGAL AUTHORITIES**
**Case No. C07-2542 SI**

Legal Authority # 1
*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir.1997))

Westlaw.

130 F.3d 1348                                                                    Page 1

130 F.3d 1348, 39 Fed.R.Serv.3d 961, 97 Cal. Daily Op. Serv. 9080, 97 Daily Journal D.A.R. 14,667
**(Cite as: 130 F.3d 1348)**

C
Coughlin v. Rogers
C.A.9 (Cal.),1997.

United States Court of Appeals,Ninth Circuit.
Morris William COUGHLIN; Natalie Ekeh;
Arnon Sabado; Leonardo Garvida; Paulino
Aquino; Romualdo Legaspi; Augustus Torres;
Larry Doria; Ford Gochuico; Renie Beasley;
Yookwan Awai; Teresita Gonzales; Bruce
Ludwig; Liza Laurencio; Rochelle Singh; Ted
Isobe; Daniel Barrientos; Susan Sarmiento; Gary
Elomina; Marivic Aduna; Maher Gherir; Cecilia
Abad; Myrna De Guzman; Guillermo Sy; Rosalie
Pascual; Alexando Armando; Nour
Mushamel-Oranjian; Samuel Oranjian; Suzanne
Pagulayan-Sy; Rey Pagulayan-Sy; Fakhrudeen
Husein; Monserrat Naguit; Rosalio Castaneda;
Remigio Santa Ana; Kristine Andrada; Dean
Andrada Jr.; Joy Andrada; Marco Flores; Luis
Soto; Mahfoud Hassan; Carolina Camacho;
Nelson Pe; Emilio Limbo; Antonio Gregorio;
Barolito Evangelista; Leslie Victoriano; Rizaldy
Melo; Rebecca Lingao; and Ronald Cortez,
Plaintiffs-Appellants,
v.
Richard K. ROGERS, District Director of the
Immigration and Naturalization Service, Los
Angeles District Office; and Immigration &
Naturalization Service, Defendants-Appellees.
No. 96-56479.

Submitted Aug. 5, 1997. [FN*]

FN* The panel unanimously finds this case
suitable for decision without oral
argument. Fed. R.App. P. 34(a) and Ninth
Circuit Rule 34-4.
Decided Dec. 4, 1997.

Action was brought for writ of mandamus to compel
Immigration and Naturalization Service (INS)
official to adjudicate 49 pending petitions or

applications. The United States District Court for
the Central District of California, Audrey B. Collins
, J., granted INS' motion for severance of plaintiffs.
Plaintiffs appealed. The Court of Appeals, T.G.
Nelson, Circuit Judge, held that plaintiffs failed to
meet requirements for joinder.

Affirmed.
West Headnotes
**[1] Federal Courts 170B ☞817**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)4 Discretion of Lower Court
            170Bk817 k. Parties; Pleading. Most
Cited Cases
District court's order granting severance of parties is
reviewed for abuse of discretion. Fed.Rules
Civ.Proc.Rule 20, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ☞241**

170A Federal Civil Procedure
   170AII Parties
      170AII(F) Permissive Joinder
         170AII(F)1 In General
            170Ak241 k. In General. Most Cited
Cases
To join together in one action, plaintiffs must meet
two specific requirements: (1) right to relief
asserted by each plaintiff must arise out of or relate
to same transaction or occurrence, or series of
transactions or occurrences; and (2) question of law
or fact common to all parties must arise in action.
Fed.Rules Civ.Proc.Rule 20, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ☞387.1**

170A Federal Civil Procedure
   170AII Parties
      170AII(J) Defects, Objections and
Amendments
         170Ak387 Misjoinder

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

130 F.3d 1348                                                                    Page 2

130 F.3d 1348, 39 Fed.R.Serv.3d 961, 97 Cal. Daily Op. Serv. 9080, 97 Daily Journal D.A.R. 14,667
**(Cite as: 130 F.3d 1348)**

170Ak387.1 k. In General. Most Cited Cases

If joined plaintiffs fail to meet requirements for joinder, district court may sever misjoined plaintiffs, as long as no substantial right will be prejudiced by severance. Fed.Rules Civ.Proc.Rule 20, 28 U.S.C.A.

**[4] Action 13 ⟲60**

13 Action

    13III Joinder, Splitting, Consolidation, and Severance

       13k60 k. Severance of Actions. Most Cited Cases

Plaintiffs failed to meet requirements for joinder in action for writ of mandamus to compel Immigration and Naturalization Service (INS) official to adjudicate 49 pending petitions or applications, and thus, district court properly ordered severance of plaintiffs; mere allegation of general delay was not enough to create common transaction or occurrence, as each plaintiff had waited different length of time and suffered different duration of alleged delay, and plaintiffs also failed to show common questions of law or fact, as each category of plaintiffs had filed different applications, petitions, or forms, and each applicant or petitioner presented different factual situation. Fed.Rules Civ.Proc.Rules 20, 21, 28 U.S.C.A.

Dan E. Korenberg, Korenberg, Abramowitz & Feldun, Encino, California, for plaintiffs-appellants. Monica L. Miller, Assistant United States Attorney, Los Angeles, California, for defendants-appellees.

Appeal from the United States District Court for the Central District of California; Audrey B. Collins, District Judge, Presiding. D.C. No. CV-96-01025-ABC.

Before: HALL, and T. G. NELSON, Circuit Judges, and WINMILL, [FN**] District Judge.

    FN** Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

T.G. NELSON, Circuit Judge:

Morris Coughlin and forty-eight other individuals (collectively "plaintiffs") appeal the district court's order granting defendants Richard Rogers' (Director of the Immigration and Naturalization Service for the Los Angeles District Office) and the Immigration and Naturalization Service's motion to sever plaintiffs. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

On February 12, 1996, plaintiffs filed a Complaint for a Writ in the Nature of Mandamus ("complaint") in federal district court, requesting the court to compel the defendants to adjudicate forty-nine pending applications or petitions. The complaint alleges that mandamus relief is appropriate because defendants have unreasonably delayed adjudicating plaintiffs' applications and petitions in violation of the Administrative Procedure Act ("APA") and the United States Constitution.

The plaintiffs' applications or petitions fall into six distinct categories: (1) twenty plaintiffs are United States citizens alleging the defendants have failed to adjudicate their petitions and applications on behalf of an alien spouse or child; (2) eleven plaintiffs are aliens alleging the defendants have failed to adjudicate their applications for adjustment of status based on an approved petition as an *1350 alien worker; (3) two plaintiffs are aliens alleging the defendants have failed to adjudicate their applications for adjustment of status based on their applications alleging that they followed their spouses to the United States; (4) five plaintiffs are aliens alleging the defendants have failed to timely adjudicate their applications to remove a conditional status; (5) one plaintiff is an alien alleging he was orally advised that his petition to remove the conditions on residence was denied and he would be issued an Order to Show Cause ("OSC") as to why he should not be deported, but never received an OSC; and (6) ten plaintiffs are lawful permanent residents who have applied for and are still awaiting a decision on their applications for naturalization.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

130 F.3d 1348

130 F.3d 1348, 39 Fed.R.Serv.3d 961, 97 Cal. Daily Op. Serv. 9080, 97 Daily Journal D.A.R. 14,667
(Cite as: 130 F.3d 1348)

II.

On April 22, 1996, defendants filed a motion with the district court to sever the plaintiffs on the ground of misjoinder. The district court granted the motion, holding as follows:

A. Standard

Rule 20(a) of the Federal Rules of Civil Procedure ( "FRCP") permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact. *Anderson v. Montgomery Ward & Co., Inc.,* 852 F.2d 1008, 1011 (7th Cir.1988); *Grayson v. K-Mart Corp.,* 849 F.Supp. 785, 787 (N.D.Ga.1994); *See also* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 1683 at p. 443 (1986).

If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance. *See* FRCP Rule 21; *See Brunet v. United Gas Pipeline Co.,* 15 F.3d 500, 505 (5th Cir.1994); *F.D.I.C. v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1253 (5th Cir.1992), *cert. denied,* 507 U.S. 1051, 113 S.Ct. 1944, 123 L.Ed.2d 650 (1993); *Sabolsky v. Budzanoski,* 457 F.2d 1245 (3d Cir.1972), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); *K-Mart Corp.,* 849 F.Supp. at 789. In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs "against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint." *Aaberg v. ACandS Inc.,* 152 F.R.D. 498, 501 (D.Md.1994).

B. Analysis

Plaintiffs fail to satisfy both the first and second prongs of the test for permissive joinder. The first prong, the "same transaction" requirement, refers to similarity in the factual background of a claim. In this case, the basic connection among all the claims is the alleged procedural problem of delay.

However, the mere allegation of general delay is not enough to create a common transaction or occurrence. Each Plaintiff has waited a different length of time, suffering a different duration of alleged delay. Furthermore, the delay is disputed

in some instances and varies from case to case. And, most importantly, there may be numerous reasons for the alleged delay. Therefore, the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence. *See Harris v. Spellman,* 150 F.R.D. 130, 132 (N.D.Ill.1993) (allegedly similar procedural errors do not convert independent prison disciplinary hearings into same series of transactions or occurrences when hearings involved different incidents of purported misconduct raising different issues of law).

Moreover, Plaintiffs do not allege that their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence. Plaintiffs do not allege a pattern or policy of delay in dealing with all applications and/or petitions by the INS. Rather, Plaintiffs merely claim that, in specified instances, applications and petitions have not been addressed in a timely manner. Pl.'s Compl. ¶ 56. Thus, Plaintiffs' claims are not sufficiently related to constitute the same transaction or occurrence.

Plaintiffs also fail to satisfy the second prong of the test for permissive joinder—common questions of law or fact. As stated**1351** above, Plaintiffs do not allege that Defendants have engaged in a policy of delay. Moreover, what may constitute undue delay in one case may not be so in another case. First, each category of Plaintiffs has filed different applications, petitions, or forms. Therefore, the INS must apply different legal standards to each type of application or petition. The legal standard may require different time frames. Second, each applicant or petitioner presents a different factual situation. Therefore, each must receive personalized attention by the INS and, ultimately, by the Court. Accordingly, there can be no common issues of fact or law.

Further, although Plaintiffs' claims are all brought under the Constitution and the Administrative Procedure Act, the mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact. Clearly, each Plaintiff's claim is discrete, and involves different legal issues, standards, and procedures. Indeed, even if Plaintiffs' cases were not severed, the Court would still have to give each claim individualized attention. Therefore, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

130 F.3d 1348                                                                                    Page 4

130 F.3d 1348, 39 Fed.R.Serv.3d 961, 97 Cal. Daily Op. Serv. 9080, 97 Daily Journal D.A.R. 14,667
**(Cite as: 130 F.3d 1348)**

claims do not involve common questions of law or fact.

In sum, the interests of justice are not served by joinder of the Plaintiffs in this case. Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense. *Guedry v. Marino,* 164 F.R.D. 181, 185 (E.D.La.1995). Here, trial efficiency will not be promoted by allowing all Plaintiffs to bring a single case. Each claim raises potentially different issues, and must be viewed in a separate and individual light by the Court. Moreover, severing Plaintiffs will not prejudice any substantial right. Accordingly, the Court hereby ORDERS as follows:

1.) Defendants' motion to sever is GRANTED; and
2.) All Plaintiffs except Morris William Coughlin are DISMISSED without prejudice.

*Coughlin v. Rogers,* No. CV 96-1025 ABC (C.D.Cal.1996) (order granting defendants' motion to sever plaintiffs) (footnote omitted).

### III.

[1] We review a district court's order granting severance of parties under Fed.R.Civ.P. 20 for abuse of discretion. *Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983); *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974).

[2][3] To join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action. Fed.R.Civ.P. 20(a); *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,* 558 F.2d 914, 917 (9th Cir.1977). If joined plaintiffs fail to meet both of these requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance. *See* Fed.R.Civ.P. 21; *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1249 (3d Cir.1972).

[4] The district court found that the plaintiffs failed to satisfy either the first or the second requirement for joinder and that severance would not prejudice

any substantial right. These findings, and the district court's order granting severance, square with Federal Rules of Civil Procedure 20 and 21 and the precedent on severance. *See, e.g., Saval,* 710 F.2d at 1031-32 (rejecting argument that allegations of fraud and common warranties satisfies the first prong of the joinder test); *Harris v. Spellman,* 150 F.R.D. 130, 132 (N.D.Ill.1993); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 178-79 (N.D.Ill.1985) (joinder of plaintiffs not proper even though nature of defendant's alleged misrepresentation to each plaintiff was similar and each plaintiff claimed violation of the same federal law); *Heath v. Bell,* 448 F.Supp. 416, 418 (M.D.Pa.1977) (joinder of federal inmates alleging that the United States Parole Commission was applying its guidelines unlawfully not proper because "the mere fact that a parole decision is involved is not enough of a connection to satisfy the same transaction requirement"). Therefore, the district **\*1352** court's order was not an abuse of discretion and must be AFFIRMED.

C.A.9 (Cal.),1997.
Coughlin v. Rogers
130 F.3d 1348, 39 Fed.R.Serv.3d 961, 97 Cal. Daily Op. Serv. 9080, 97 Daily Journal D.A.R. 14,667

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 2
*In Re Rezulin Products Liability Litigation*, 168 F.Supp.2d 136 (S.D.N.Y. 2001)

Westlaw.

168 F.Supp.2d 136

Page 1

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

▷
In re Rezulin Products Liability Litigation
S.D.N.Y.,2001.

United States District Court,S.D. New York.
In re: REZULIN PRODUCTS LIABILITY
LITIGATION
**No. 00 CIV. 2843(LAK).**

Oct. 16, 2001.

Diabetes patients who had used prescription medication later withdrawn from market brought multiple personal injury actions against drug's manufacturer, pharmacies, physicians, and others. Actions were removed on diversity grounds, then consolidated for pretrial proceedings by Multidistrict Litigation panel. Patients moved to remand. The District Court, Kaplan, J., held that: (1) patients failed to state claim against non-diverse sales representative; (2) patient's non-diverse survivor stated claim against home health care provider; but (3) claim against home health care provider was misjoined with claims against manufacturer, and survivor's action would be severed; (4) non-diverse medical malpractice claims could proceed despite non-filing of expert report; and (5) claim for medical monitoring fund met amount-in-controversy requirement for diversity jurisdiction.

Motions granted in part and denied in part.

See also 133 F.Supp.2d 272.
West Headnotes
**[1] Products Liability 313A ☞73**

313A Products Liability
  313AII Actions
    313Ak72 Pleading
      313Ak73 k. Complaint, Declaration, or Petition in General. Most Cited Cases
  (Formerly 138k20.1 Drugs and Narcotics)
Under Alabama law, diabetes patients'

failure-to-warn claim against pharmaceutical drug sales representative, in action alleging personal injury from use of prescription drug which also named manufacturer and prescribing physicians as defendants, required specific allegation that representative failed to warn physicians of drug's dangers; patients could not rely on general allegations against defendants collectively.

**[2] Products Liability 313A ☞46.2**

313A Products Liability
  313AI Scope in General
    313AI(B) Particular Products, Application to Products
      313Ak46 Health Care and Medical Products
        313Ak46.2 k. Drugs in General. Most Cited Cases
  (Formerly 138k18, 138k17.1 Drugs and Narcotics)
Under Alabama law, in order to establish proximate cause in prescription drug failure-to-warn claim, whether founded on extended manufacturers' liability doctrine (AEMLD) or common-law negligence, plaintiff must show that defendant failed to warn prescribing physician.

**[3] Health 198H ☞706**

198H Health
  198HV Malpractice, Negligence, or Breach of Duty
    198HV(C) Particular Procedures
      198Hk706 k. Pharmacological Services. Most Cited Cases
  (Formerly 198Hk457, 138k17.1 Drugs and Narcotics)
Diabetes patient's survivor stated claim against home health care provider for negligent administration of unsafe drug under Alabama law by alleging that provider contributed to patient's death by failing to coordinate with prescribing physician to eliminate drug from patient's regimen until well after time when drug was withdrawn from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136                                                                Page 2

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

market.

**[4] Federal Civil Procedure 170A ☜387.1**

170A Federal Civil Procedure
    170AII Parties
        170AII(J)    Defects,    Objections    and
Amendments
            170Ak387 Misjoinder
                170Ak387.1 k. In General. Most Cited
Cases
Claims against home health care provider for
negligent administration of diabetes drug after its
withdrawal from market were misjoined with toxic
tort claims against manufacturer; claims against
provider did not arise out of same transaction or
occurrence as toxic tort claims. Fed.Rules
Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[5] Removal of Cases 334 ☜39**

334 Removal of Cases
    334III Citizenship or Alienage of Parties
        334k39 k. Dismissal as to One or More
Coparties. Most Cited Cases
While misjoined claims asserted by non-diverse
plaintiff in removed action had at least empirical, if
not transactional, relationship to claims of other
plaintiffs, severance of misjoined plaintiff was
appropriate to preserve defendant's right of removal.

**[6] Federal Civil Procedure 170A ☜387.1**

170A Federal Civil Procedure
    170AII Parties
        170AII(J)    Defects,    Objections    and
Amendments
            170Ak387 Misjoinder
                170Ak387.1 k. In General. Most Cited
Cases
Personal injury claims against non-diverse
prescribing physicians in connection with diabetes
drug later withdrawn from market were misjoined
with toxic tort claims against diverse manufacturer,
since claims against physicians alleged source of
drug and specific series of occurrences different
from series of occurrences related to claims against
manufacturer. Fed.Rules Civ.Proc.Rule 20(a), 28
U.S.C.A.

**[7] Health 198H ☜805**

198H Health
    198HV Malpractice, Negligence, or Breach of
Duty
        198HV(G) Actions and Proceedings
            198Hk805 k. Sanctions for Failing to File
Affidavits; Dismissal with or Without Prejudice.
Most Cited Cases
    (Formerly 299k18.20 Physicians and Surgeons)
Under Texas law as predicted by federal district
court, failure by medical malpractice plaintiffs to
timely file expert report called for by statute did not
require dismissal of action absent dismissal motion
by physician defendants. Vernon's Ann.Texas
Const. Art. 4590i, § 1301(d, e, g).

**[8] Removal of Cases 334 ☜74**

334 Removal of Cases
    334V Amount or Value in Controversy
        334k74 k. Amount or Value Claimed or
Involved. Most Cited Cases
Claim for medical monitoring fund, in removed
product liability class action against diabetes drug
manufacturer,    exceeded    amount-in-controversy
requirement for diversity jurisdiction, precluding
remand: claim lent itself to common-fund exception
to disaggregation principle; value of fund was
appropriately measurable as cost to manufacturer of
creating fund, since no plaintiff would receive any
benefit absent its full funding; and base cost of
setting up and administering fund, even without
accounting for research costs, was likely to exceed
jurisdictional amount. 28 U.S.C.A. §§ 1332,
1447(c).

**[9] Federal Courts 170B ☜339**

170B Federal Courts
    170BV Amount or Value in Controversy
Affecting Jurisdiction
        170Bk339 k. Amount Claimed or Value of
Property Right in General. Most Cited Cases
When claim seeks primarily equitable relief, amount
in controversy, for purposes of diversity
jurisdiction, is measured by value of object of
litigation to plaintiff; one method of measuring that
value is by reference to cost to defendant. 28

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136                                                        Page 3

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

U.S.C.A. § 1332.

Seth Lesser,Javier Bleichmar, Bernstein, Litowitz,
Berger & Grossman, New York City, for Plaintiff
Charlie Fae Hopkins.
David Casso, Casso & Pettitt, L.L.P., McAllen, TX,
for Plaintiff Berta Soto.
Mark W. Davis, Ron M. Feder, Davis & Feder,
Gulfport, MS, for Plaintiff Beatrice Bell.
Peter D. Derbes, Frank A. Silvestri, John P.
Massicot, Silvestri & Massicot, New Orleans, LA,
for Plaintiff Chris Polehouse.
Andy D. Birchfield, Mark Englehart, Montgomery,
AL, for Plaintiffs Flora Floyd and Lizzie White.
Charles M. Noteboom, Noteboom-The Law Firm,
Hurst, TX, for Plaintiff Carol Brown.
Christopher E. Sanspree, Birmingham, AL, for
Plaintiff Olivia Cochran.
David Klingsberg, Alan E. Rothman, Kaye,
Scholer, Fierman, Hays & Handler, LLP, New York
City, for Defendants Parke-Davis and
Warner-Lambert Co.
Linda L. Maloney, D. Michael Wallach, Charles
Florsheim, Wallach & Moore, P.C., Fort Worth,
TX, for Defendant James R. Terry, M.D.

### MEMORANDUM OPINION
KAPLAN, District Judge.
These eight actions are among the hundreds seeking
recovery for personal injuries allegedly resulting
from the use of the prescription diabetes medication
Rezulin, formerly manufactured by defendants
Warner-Lambert Co. and its Parke-Davis division,
that have been consolidated here for pretrial
proceedings by the Judicial Panel on Multidistrict
Litigation. Each of these eight actions originally was
commenced in a state court and removed by
defendants on the basis of diversity of citizenship.
The matter now is before the Court on plaintiffs'
motions to remand on the ground that subject matter
jurisdiction is lacking.

These motions come on the heels of this Court's
disposition of motions to remand in sixteen other
cases transferred to this Court as part of the same
multidistrict proceeding. Familiarity with the prior
opinion is assumed. [FN1]

FN1. *In re Rezulin Prods. Liab. Litig.,* 133
F.Supp.2d    272    (S.D.N.Y.2001)
(hereinafter *Rezulin I* ).

*I. Alabama Actions*

[1] In two Alabama actions,[FN2] defendants claim
plaintiffs fraudulently joined an Alabama sales
representative, Kam *139 Wyatt, whose presence is
said to destroy complete diversity. For the reasons
stated in *Rezulin I,* plaintiffs have failed to state a
claim under Alabama law against the sales
representative. In particular, plaintiffs have not
alleged "that [they] suffered injury caused by one
who sold a defective product," a requirement under
the Alabama Extended Manufacturers Liability
Doctrine (the "AEMLD"), as "there is nothing in
the complaint indicating that the defendant sales
representative sold Rezulin to [plaintiffs or
plaintiffs' physicians]." [FN3]

FN2. The Alabama actions are *Floyd v.
Warner-Lambert Co.,* No. 00 Civ. 965,
and *White v. Warner-Lambert Co.,* No. 00
Civ. 966.

FN3. *Rezulin I,* 133 F.Supp.2d at 286-87.

[2] Plaintiffs argue that the AEMLD does not
subsume all claims arising from injury resulting
from a defective product, despite this Court's prior
decision to the contrary.[FN4] Yet even assuming
that the AEMLD does not subsume negligent failure
to warn claims,[FN5] the only distinction between
such claims brought under the AEMLD or under a
common law negligence theory is that an inadequate
warning constitutes negligence *per se* under the
AEMLD, [FN6] while plaintiffs under the latter must
show a lack of due care to establish negligence.[FN7]
This distinction is immaterial to the question of
whether plaintiffs have alleged proximate cause, as
they must to state a claim under either theory.[FN8]
Because Alabama adheres to the learned
intermediary*140 doctrine, in order to establish
proximate cause in a prescription drug failure to
warn claim, whether founded on the AEMLD or
common law negligence, a plaintiff must show that
the defendant failed to warn the prescribing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

physician.[FN9] Plaintiffs here have failed to allege that Wyatt proximately caused plaintiffs' injuries by failing to warn plaintiffs' prescribing physicians of the dangers of Rezulin. In fact, plaintiffs make no specific allegations against Wyatt at all, instead attributing wrongdoing to the collective "defendants, " none of whom is alleged to have had any dealings with plaintiffs' prescribing physicians.[FN10]

FN4. *See* Floyd and White Reply Mem. at Point A, first paragraph (no page numbers provided) (referring to 133 F.Supp.2d at 281 n. 10) (citing *Johnson v. General Motors Corp.,* 82 F.Supp.2d 1326, 1329 (S.D.Ala.1997); *Veal v. Teleflex, Inc.,* 586 So.2d 188, 190-91 (Ala.1991)).

FN5. The post-*Veal* Alabama Supreme Court cases to which plaintiffs cite arguably support only a separate theory of negligent failure to warn. *See Clarke Industries, Inc. v. Home Indemnity Co.,* 591 So.2d 458 (Ala.1991); *Deere & Co. v. Grose,* 586 So.2d 196 (Ala.1991). The other cases cited by plaintiffs either are distinguishable or support this Court's holding that negligence claims against a manufacturer, seller or distributor in a products liability action are subsumed by the AEMLD. *Flagstar Enterprises, Inc. v. Davis,* 709 So.2d 1132 (Ala.1997), was not a products liability action. *Cessna Aircraft Co. v. Trzcinski,* 682 So.2d 17 (Ala.1996), involved the standard for awarding punitive damages pursuant to an Alabama statute. The AEMLD does not dispense with negligence; rather it dictates that the one who manufactures, sells, or distributes a defective product is negligent *per se;* subject to certain allowable affirmative defenses, the plaintiff need not prove a lack of due care. *See Casrell v. Altec Industries, Inc.,* 335 So.2d 128, 132-33 (Ala.1976); *Atkins v. American Motors Corp.,* 335 So.2d 134, 141 (Ala.1976). Thus it is that *Yarbrough v. Sears Roebuck & Co.,* 628 So.2d 478 (Ala.1993), addressed negligent failure to

warn as a claim alleged under the AEMLD. Although *Ford Motor Co. v. Burdeshaw,* 661 So.2d 236 (Ala.1995), discusses negligence as a viable theory separate from claims alleged under the AEMLD, it relies for this proposition on a pre-*Veal* case, *General Motors Corp. v. Edwards,* 482 So.2d 1176 (1985). Thus, there is no indication that *Veal* 's holding has been undermined by subsequent decisions of the Alabama Supreme Court. Certainly the Eleventh Circuit, to which this Court defers in interpretation of Alabama law, *see Factors, Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 283 (2d Cir.1981) , adheres to that view. *See, e.g., Spain v. Brown & Williamson Tobacco Corp.,* 230 F.3d 1300, 1310 (11th Cir.2000) (negligence and wantonness claims merge into claim under AEMLD) (citing *Veal* ). Here, plaintiffs allege that defendant Wyatt "was in the business of marketing, selling and distributing the pharmaceutical Rezulin." Floyd and White Cpts ¶ 7. Their claims therefore fall under the AEMLD.

FN6. *See Stone v. Smith, Kline & French Laboratories,* 447 So.2d 1301, 1304 (Ala.1984) ("the adequacy of the warning issued by a drug manufacturer bears on whether a plaintiff has proved a prima facie case under the [AEMLD]").

FN7. *See Atkins,* 335 So.2d at 139.

FN8. *See, e.g., Clarke Industries,* 591 So.2d at 461-62 ("Under both the AEMLD and the negligence theories, [plaintiff] has the burden of proving proximate causation. ").

FN9. Proximate causation in a failure to warn claim for prescription drugs, whether founded on the AEMLD or common law negligence, means that plaintiff must show that the defendant failed to warn the prescribing physician. *See, e.g., Stone,* 447 So.2d at 1304, ("manufacturer's duty

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

to warn is limited to an obligation to advise the *prescribing physician* of any potential dangers that may result from the drug's use") (emphasis added); *see generally Rezulin I,* 133 F.Supp.2d at 282 (discussing doctrine as it applies to sales representatives of drug manufacturers).

FN10. *See Rezulin I,* 133 F.Supp.2d at 291 (denying remand where plaintiffs failed to make specific allegations against pharmacy defendants).

For his part, defendant Wyatt has submitted an affidavit in which he denies that he sold or took orders for Rezulin, marketed or advertised Rezulin to the general public, or had any direct dealings with plaintiffs.[FN11] Plaintiffs have not submitted any evidence undermining defendants' position. Rather, they rejoin that the affidavit leaves open to question whether Wyatt had any dealings with plaintiffs' physicians, and, notwithstanding the complaint's failure to allege any such connection, urge that remand should be granted because further discovery might establish proximate cause.[FN12]

FN11. Def. Exs. 7, 8, ¶ 4.

FN12. *See* Floyd and White Reply Mem. at Point B ¶¶ 3, 4. Plaintiffs' counsel has submitted to chambers copies of a motion to stay consideration of the motion to remand pending further discovery, as well as a memorandum and affidavit in support of the motion to stay. However, plaintiffs' counsel has neglected to file these documents with the Clerk of Court. The Court therefore will not consider them. *See In Re Rezulin Prods. Liab. Litig.,* MDL No. 1348(LAK), Pretrial Order No. 21 (S.D.N.Y. June 7, 2001). This order is not meant to be draconian. Motions not filed with the Clerk of Court are not part of the record. See Fed. R.App. P. 10. It is simply unworkable for a court presiding over a Multidistrict Litigation with cases numbering in the hundreds to keep track of motions that are not docketed. Although

plaintiffs here and in several other cases that are the subject of this opinion have failed also to file their reply papers in support of the motions to remand, the Court considers the replies nonetheless, as neither Pretrial Order No. 14 nor Pretrial Order No. 21 clarified filing procedures with respect to reply papers. The Court therefore has docketed reply papers not properly filed. It will not do so in the future.

While this is a motion to remand rather than for summary judgment, the analogy to summary judgment practice is instructive.[FN13] Rule 56(f) provides:

FN13. *See, e.g., Jackson v. Pneumatic Production Corp.,* No. Civ. A. 00-3615, 2001 WL 238214, at * 3 (E.D.La. March 6, 2001) (request for further discovery prior to a decision on motion to remand is " akin to the procedural vehicle available in the context of a motion for summary judgment under Fed.R.Civ.P. 56(f) to request a continuance").

"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or *141 discovery to be had or may make such other order as is just."
A party seeking relief under Rule 56(f) therefore must submit an affidavit showing "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. " [FN14] Although the failure to file such an affidavit perhaps is not conclusive on a motion to remand, as Rule 56(f) does not apply in literal terms,[FN15] the essential policy of Rule 56(f)-that a party resisting a motion supported by competent evidence cannot defeat the motion with arrant speculation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

about what discovery might show-nevertheless is applicable.

> FN14. *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995)).

> FN15. *See, e.g., Jackson,* 2001 WL at *3 (granting request for further discovery on motion to remand despite lack of affidavit satisfying 56(f) requirements in interest of justice). Although plaintiffs' counsel submitted an affidavit in support of plaintiffs' purported motion to stay, it, along with the motion, was not filed with the Clerk of Court and accordingly is not here considered. *See supra* note 12.

Although plaintiffs have put forth arguments as to how discovery might create a genuine issue of material fact, a court in deciding a motion to remand must look to the allegations in the complaint, rather than to plaintiffs' wishful speculation as to what allegations might be made in an amended complaint following discovery.[FN16] Granting discovery in such a case as this would allow plaintiffs to name anyone as a defendant in a lawsuit without making the allegations necessary to state a claim upon which relief might be granted and then to seek discovery in hope of finding a basis for a claim. Plaintiffs, moreover, seek to profit from the inadequacies of their complaints by pointing to ostensible "omissions" in Wyatt's affidavit. Yet the affidavit was drafted in response to plaintiffs' allegations, and the failure to deny allegations that plaintiffs have not made does not create a disputed issue of fact. Even granting that Rule 56(f) does not apply with full rigor, there nevertheless must exist a minimum of legally sufficient allegations in order to merit discovery pending decision on the motion. Otherwise, the request for discovery becomes one "to find out if [the party] has a claim, rather than that it has a claim for which it needs additional discovery. [This is] not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure."[FN17] As plaintiffs have made no allegations against the sales representative that,

if proven, would entitle them to relief, and have shown no basis for supposing that discovery would enable them to do so, their request for discovery and the motions to remand the Alabama cases are denied.

> FN16. *See Rezulin I,* 133 F.Supp.2d at 284 and n. 5 (Motions to remand must be determined "based on the pleadings. Federal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the complaint." ) (citing cases).

> FN17. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994).

### II. Mississippi Actions

Plaintiffs in three Mississippi actions assert claims against Mississippi pharmacies, pharmacists, doctors, and a home health care provider.[FN18] For the reasons stated in *142 *Rezulin I,* the Court holds that the pharmacists and pharmacies have been joined improperly. Their presence is immaterial for diversity purposes.[FN19]

> FN18. The Mississippi cases are *Polehouse v. Parke-Davis,* No. 01 Civ. 971, which alleges claims against pharmacies and a home health care provider; *Bell v. Warner-Lambert Co.,* No. 01 Civ. 973, which alleges claims against doctors and pharmacists; and *Cochran v. Warner-Lambert Co.,* No. 01 Civ. 972, which alleges claims against pharmacies.

> FN19. *See Rezulin I,* 133 F.Supp.2d at 288-90.

In *Polehouse v. Parke-Davis,*[FN20] defendants argue that the home health care provider was joined fraudulently and, in any case, that plaintiffs who do not assert claims against the home health care provider were misjoined. In response to the motion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136

168 F.Supp.2d 136
(Cite as: 168 F.Supp.2d 136)

Page 7

to remand in *Bell v. Warner-Lambert Co.*,[FN21] defendants argue that plaintiffs who do not assert claims against the non-diverse physician defendants were misjoined with plaintiffs who assert such claims.

FN20. No. 01 Civ. 971.

FN21. No. 01 Civ. 973.

*A. Improper Joinder of Home Health Care Provider*

[3] In *Polehouse,* defendants claim that plaintiffs fraudulently joined Gilbert's Home Health Agency ( "Gilbert's"), a home health care provider that allegedly contributed to the death of plaintiff Howard Lee Cothern by "failing to coordinate with physicians the discontinuation of Rezulin ... when Rezulin was withdrawn from the market," specifically through the actions of one Gilbert's employee who allegedly "continued to administer and dispense Rezulin to Howard Cothern after [ Rezulin] had been removed from the market ...."[FN22] Defendants do not dispute the legal sufficiency of plaintiffs' allegations. Rather, they challenge their truth.

FN22. *Polehouse* Cpt ¶¶ 45, 46.

Defendants submit two affidavits of Michelle Pollard, director of clinical services at Gilbert's, who states that Gilbert's obtained all prescription medications, including Cothern's Rezulin, from Cothern or his caregiver, on the prescription of a physician and without any involvement of Gilbert's employees, and that Gilbert's simply provided Rezulin to Cothern in a pill box based on the dosage information provided on the drug container labels. [FN23] Plaintiffs have submitted a Gilbert's list of Cothern's medications in which Rezulin was crossed out with the note "D/C" while troglitazone (the generic name for Rezulin) was not crossed out. In response, Pollard states that employee Polyanna Temple crossed out Rezulin "in order to delete the duplicative listing." [FN24] Pollard states further that Gilbert's continued to place Rezulin in Cothern's pill box until March 28, when employee

Carol Smith realized that Cothern's Rezulin prescription had not been discontinued and informed a Dr. Janes that Rezulin had been taken off the market, whereupon Janes terminated the prescription.[FN25] In response to these affidavits, plaintiff Ouida Dupree, Cothern's daughter and primary caregiver, has submitted an affidavit in which she states that on March 30, Smith, a replacement nurse for Cothern's daily care nurse, Kimberly Ross, "was appalled to find out that Mr. Cothern had been dispensed Rezulin by Ms. Ross," immediately informed Dupree that Cothern was not supposed to be taking Rezulin as it had been taken off the market, and thereupon called Gilbert's to alert it to the situation.[FN26]

FN23. *See* Def. Compendium of Auth., Ex.5 (Pollard 10/10/00 Aff.) ¶ 5, Ex. 6 (Pollard 11/13/00 Aff.) ¶¶ 4, 5.

FN24. Pollard 11/13/00 Aff. ¶ 5.

FN25. *Id.* at ¶ 6.

FN26. Pl. Renewed Motion for Remand, Ex. 3 (Dupree Aff.) ¶¶ 11, 12.

**\*143** The Pollard affidavits and attached documents do not constitute competent, admissible evidence relieving Gilbert's of all potential liability. First, Pollard's statements regarding Smith's communications with Dr. Janes are hearsay.[FN27] The statements regarding the lack of physician involvement in Temple's crossing out and marking " D/C" next to Rezulin on Cothern's medications list, her thoughts and state of mind when doing so, and Smith's thoughts and state of mind when communicating with Dr. Janes could not have been based on Pollard's personal knowledge.[FN28] In particular, without the intentions Pollard ascribes to Temple's actions, an equally viable interpretation of the document is that Cothern's physician ordered Rezulin discontinued, but Temple did not realize that troglitazone was the same medication and therefore did not mark it discontinued.[FN29]

FN27. The Court notes that Pollard's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136

Page 8

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

affidavit does not state that Janes was Cothern's physician. Rather, the affidavit states that "Carol Smith noticed that Cothern's prescription for Rezulin had not been discontinued by his physician ... and she provided this information to Dr. Julian Janes." Pollard 11/13/00 Aff. ¶ 6. The next sentence states that "Dr. Janes discontinued Rezulin," thus implying that he had originally prescribed it to Cothern. As plaintiffs do not dispute that Janes was Cothern's physician, the Court assumes it to be the case.

FN28. Although Pollard purports to have " personal knowledge" of the matters contained" in the affidavit, *see* Pollard 11/13/00 Aff. ¶ 2, Pollard does not state she was present with Temple or Smith at the time in question, and in any event could not have personal knowledge of either's state of mind. Pollard's statements are more likely the result of speculation, her examination of the attached records, or else statements each employee made to Pollard regarding the incidents; such statements would be hearsay if offered for their truth.

FN29. Although Pollard states that Gilbert's did not receive prescriptions from physicians, *see* Pollard 11/13/00 Aff. ¶ 4, this statement conflicts with the Physician Communication Note and the Physician Verbal Order attached to the affidavit, both Gilbert's records on the face of which Dr. Janes discontinues Rezulin and prescribes a new medication.

Pollard attaches supporting documents, namely (1) a "Physician Communication Note," which contains a note, apparently signed by Smith on March 28, indicating that Cothern was taking Rezulin and that Rezulin had been removed from the market, and a note apparently signed by a Gilbert's nurse on March 28 reflecting Dr. Janes' alleged order to discontinue Rezulin [FN30] and (2) a "Physician Verbal Order," which notes Dr. Janes' alleged March 28 order to discontinue Cothern's Rezulin

prescription and to dispense a new medication, apparently signed by a Gilbert's employee.[FN31] Pollard authenticates the attached documents and attests they were created and maintained in the ordinary course of business.[FN32] Plaintiffs do not dispute the admissibility or authenticity of the documents or the signatures contained therein, but rather limit their objections to Pollard's hearsay statements. Nevertheless, this Court does not see fit to permit removal on the basis of these documents.

> FN30. Pollard 11/13/00 Aff. Ex. B (included in defendants' original removal papers).
>
> FN31. The signature is illegible.
>
> FN32. *Accord* Fed.R.Civ.P. 56(e).

First, the documents-records of alleged communications between Dr. Janes and Gilbert's regarding discontinuation of Cothern's prescription-contradict Pollard's statements that " Cothern's physician did not provide any prescription for any of Cothern's medications ... to Gilbert's or any of its employees," and that Cothern "obtained the medications ... on the prescription of a physician, without any involvement**144** by Gilbert's or its employees," [FN33] raising doubts as to the veracity of either the statements or the documents. Second, the documents do not remove the possibility that Ross, a registered nurse,[FN34] herself took responsibility for managing Cothern's prescription medications and made an error with respect to Rezulin. Any belated verbal order from Janes could have been meant to remedy Ross's error. Third, the documents' only proof of the date of Janes' order comes from notes of Gilbert's employees. There is no dated physician's signature on the Physician's Communication Note, but rather a signature of another person (apparently a Gilbert's employee) dated March 28 and that person's note that Dr. Janes made a verbal order to Gilbert's to discontinue Rezulin. [FN35] Nor is Dr. Janes's signature on the Verbal Order dated; the only record of the order date on that document comes from Gilbert's. While not passing judgment on the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

veracity of the verbal order date as indicated in the records, the Court finds that the documents fail to meet the stringent burden imposed on defendants to show that plaintiff's allegations "are so clearly false and fictitious that no factual basis exists for an honest belief on the part of plaintiff that there is liability." [FN36] In light of the inadmissibility of the Pollard statements and the supporting documents' failure conclusively to show that Janes was solely responsible for Cothern's Rezulin prescription and that he failed to discontinue the prescription prior to March 28, defendants have failed to show that plaintiff's allegations against Gilbert's are without basis in fact.[FN37] Accordingly, the joinder of Gilbert's was appropriate.

FN33. Pollard 11/13/00 Aff. ¶ 4.

FN34. *See* Dupree Aff. ¶ 5. Defendants do not dispute this.

FN35. *See* Pollard 11/13/00 Aff. Ex. B. The line marked "physician's signature" reads "VO Dr. James."

FN36. *Rezulin I,* 133 F.Supp.2d at 281 (internal quotations omitted).

FN37. Plaintiffs argue also that they assert valid claims against Gilbert's for negligent catheter care. However, there were no such allegations made in the complaint and the Court therefore does not consider them.

### B. Misjoinder of Plaintiffs

Defendants in *Polehouse* and in *Bell* argue in the alternative that plaintiffs with valid claims against diverse defendants were misjoined with plaintiffs who do not assert valid claims against diverse defendants.

Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a). Rule 20(a) provides in relevant part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action." [FN38]

FN38. Fed.R.Civ.P. 20(a).

### 1. Polehouse

[4] In *Polehouse,* plaintiffs alleging claims against the drug manufacturers alone join plaintiff Dupree, who alleges also the claims against Gilbert's, the home health care provider. While Dupree's additional claims against the health care provider for negligent administration of Rezulin after its withdrawal from the market do not arise out of the same transaction or occurrence as the claims against the drug **\*145** manufacturers for negligent marketing and distribution and failure to warn, this alone does not establish misjoinder. A plaintiff need only assert "any" claim arising out of the same transaction or occurrence or series of transactions or occurrences as the other plaintiffs [FN39] and "need not be interested in obtaining or defending against all the relief demanded." [FN40] Thus, the question is whether Dupree makes at least one claim that arises out of the same transaction or occurrence or series of transactions or occurrences as the claims of her co-plaintiffs. Although case law on the question conflicts in certain respects, the Court determines she does not.

FN39. *See Mosley v. General Motors Corp.,* 497 F.2d 1330, 1334 (8th Cir.1974) (Rule 20(a) only requires a single basis of commonality, either in law or fact for joinder to be acceptable); *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities,* 67 F.R.D. 634, 637 (D.Del.1975) (Rule 20 does not require precise congruence of all factual and legal issues).

FN40. Fed.R.Civ.P. 20(a).

In the *Diet Drugs* litigation, Judge Bechtle found

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

that plaintiffs alleging claims against drug manufacturers almost identical to those alleged here were misjoined because "the claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, did not satisfy the transaction or occurrence requirement." [FN41] Similarly, in *Simmons v. Wyeth Laboratories, Inc.,*[FN42] the court found that plaintiffs alleging similar claims against drug manufacturers were misjoined because "plaintiffs do not allege the exact nature of their injuries or damages, other than averring that plaintiffs experience one or more of numerous injuries and side effects." [FN43] In short, plaintiffs' allegations could not "be said to have arisen from the same basic set of facts." [FN44] The same reasoning applied in the *Bone Screws* litigation, where Judge Bechtle framed the relevant question as whether "the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances" and found that "joinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is ... not a proper joinder." [FN45] These cases thus suggest that the joinder of Dupree, with her claim against Gilbert's, with other plaintiffs lacking such a claim was improper.

> FN41. *In re Diet Drugs,* No. Civ. A. 98-20478, 1999 WL 554584, at *4 (E.D.Pa. July 16, 1999). Judge Bechtle rejected plaintiffs argument that "issues of duty, breach of duty, proximate cause and resulting harm are common to all the Plaintiffs." *Id.*

> FN42. Nos. 96 CV 6631, 6686, 6728, 6730, 1996 WL 617492 (E.D.Pa. Oct.24, 1996).

> FN43. *Id.* at *1.

> FN44. *Id.*

> FN45. *In re Orthopedic Bone Screw Prods. Liab. Litig.,* MDL No. 1341, 1995

WL 428683, at *1-2 (E.D.Pa. July 15, 1995).

Plaintiffs seek a different conclusion, relying on *Abraham v. Volkswagen of America, Inc.*[FN46] The Second Circuit there held that several plaintiffs' uniform allegations of an automobile valve stem seal defect constituted "logically related transactions," and therefore were joined properly, although plaintiffs had purchased their cars from different sources, had been in separate accidents and suffered separate injuries.[FN47] But *Abraham* does not control here.

> FN46. 795 F.2d 238 (2d Cir.1986).

> FN47. *Id.* at 251. *See also Dayton Ind. Sch. Dist. v. U.S. Mineral Prods. Co.,* Nos. Civ. A. B-87-00507, B-88-00429, 1989 WL 237732, at *3 (E.D. Tex.-Beaumont Div. Feb. 14, 1989) (applying *Abraham* reasoning to permit joinder of plaintiffs alleging unreasonable hazards of asbestos and seeking recovery of costs for removal).

**\*146** Unlike cases involving a pure product defect, toxic tort cases raise more complicated issues of causation and exposure. This is not, as was *Abraham,* a situation with an identical product defect allegedly causing identical results-breakage of the valve stem seal-which in turn caused different injuries depending on the circumstances of the particular accident. [FN48] The plaintiffs in *Polehouse* allege a defect (or defects) the precise contours of which are unknown and which may have caused different results-not merely different injuries-in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. As in *Simmons,* they do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common.[FN49] Joinder "of several plaintiffs who

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 12 of 19

Page 11

have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." [FN50] For these reasons, plaintiffs in *Polehouse* are misjoined.

> FN48. *Abraham,* 795 F.2d at 251 ("All plaintiffs now allege as the basis for their claims the purchase of a Volkswagen Rabbit with a valve stem seal made of defective material that will cause it to harden and break over time.").

> FN49. Judge Bechtle dismissed the claims of those plaintiffs not residing in Alabama, the state in which the complaint originally was filed, upon finding that "plaintiffs do not allege they received the drugs from the same source or any other similar connection," and in particular that " plaintiffs do not allege that they received or purchased diet drugs in Alabama." *Id.* at *3. See also Simmons v. Wyeth Lab., Inc.,* 1996 WL 617492, at *4 (severing plaintiffs misjoined under similar circumstances).

> FN50. *In re Diet Drugs,* 1999 WL 554584, at *3. See also Nassau County Assn. of Ins. Agents, Inc. v. Aetna Life & Cas. Co.,* 497 F.2d 1151, 1154 (2d Cir.), *cert. denied,* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974) (misjoinder of 164 defendant insurance agents where plaintiffs alleged " no connection at all between the practices engaged in by each," actions charged " were separate and unrelated," and termination of policies occurred "at different times for different reasons with regard to different agents"); *Kenvin v. Newburger, Loeb & Co.,* 37 F.R.D. 473 (S.D.N.Y.1965) (misjoinder of defendant stockholders where, although "wrongdoing of each defendant was identical, the loans and securities involved and the dates on which the transactions were entered into differed ... plaintiffs had alleged unrelated acts which happened to involve violations of the same ... duty").

Although under this analysis it is likely that many of the plaintiffs in this multidistrict litigation are misjoined, in the interests of efficiently directing the court's resources to the pretrial coordination efforts designated it by the Multidistrict Panel, the Court addresses here only joinder that affects federal jurisdiction, leaving transferee courts on remand to consider misjoinder of remaining parties. *See In re Diet Drugs,* 1999 WL 554584, at *5.

[5] This, however, is not the end of the inquiry. When defendants assert misjoinder as a ground for removal, the issue becomes more complex. Although misjoinder is a ground for dismissal or severance of an improperly joined party, the vast majority of courts confronting the issue on remand motions have found that misjoinder of a party with a unique claim against a non-diverse adversary is not alone a basis for remand. One treatise suggests that this is because improper joinder does not defeat the possibility of a claim against the misjoined party, as is required to satisfy the traditional standard *147 for fraudulent joinder in discounting the citizenship of non-diverse parties. [FN51] Thus, courts considering the issue generally have looked for the additional element of a bad faith attempt to defeat diversity, defining misjoinder of this type as a third species of fraudulent joinder.[FN52]

> FN51. 14B Charles Allen Wright, Et Al., Federal Practice And Procedure: Jurisdiction 2B (hereinafter "Wright") § 3723, at 657 (3d ed.1998).

> FN52. See Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996) , *abrogated on other grounds, Cohen v. Office Depot,* 204 F.3d 1069 (11th Cir.2000). Unlike the other types of fraudulent joinder-lack of any possibly legally sufficient claim against the defendant or outright fraud in the pleading of jurisdictional facts-where the plaintiff's intent to defeat diversity is immaterial to showing merely colorable or bad faith

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

allegations, *see* 14B Wright § 3723, at 629 (citing cases), intent to destroy diversity becomes an element in fraudulent misjoinder, most likely because, unlike frivolous or false allegations, mere misjoinder of parties does not always indicate bad faith.

Defendants rely on *Tapscott v. MS Dealer Service Corp.*[FN53] for the proposition that "it is just as improper to join plaintiffs who have no connection to a non-diverse defendant as it is to join plaintiffs who have no connection with one another." [FN54] *Tapscott* involved, in effect, a merger of two entirely distinct lawsuits. One group of plaintiffs representing a putative class sued one group of defendants for statutory fraud arising from the sale of automobile service contracts. Another group of plaintiffs representing a separate putative merchant class sued another group of defendants for statutory fraud arising from the sale of extended service contracts in connection with the sale of retail products. The court held the defendants misjoined because on the face of the complaint there was not one claim against them even remotely arising from the same transaction or occurrence. All that the claims shared was an invocation of the Alabama fraud statute, rendering joinder "so egregious as to constitute fraudulent joinder." [FN55]

FN53. 77 F.3d 1353.

FN54. Def. Mem. at 22.

FN55. *Tapscott,* 77 F.3d at 1360.

This is a different situation. Here, all plaintiffs arguably assert at least one claim in common against the drug manufacturers. Nevertheless, it is clear that the joinder of plaintiff Dupree in particular destroys diversity. While it may not rise to the level of the egregious misjoinder in the sense that Dupree's claims have at least an empirical, if not a transactional, relationship to the claims of all the other plaintiffs, it is not clear why the standard used in *Tapscott* with respect to misjoined defendants necessarily applies to misjoined plaintiffs. Arguably a plaintiff's right to choose

among defendants and claims-the principal reason for imposing a strict standard of fraudulent joinder to effect removal-is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the same weight when balanced against the defendant's right to removal. While aware that several courts have applied *Tapscott* 's egregiousness standard when considering misjoinder of plaintiffs in the context of remand petitions,[FN56] this Court *148 respectfully takes another path. [FN57]

FN56. *See, e.g., In re Diet Drugs,* 1999 WL 554584 at *3 (although plaintiffs were "clearly misjoined," to ignore citizenship of misjoined plaintiffs, "court must find that the joinder is so egregious that it constitutes fraudulent joinder because it wrongfully deprives Defendants the right of removal"); *Lyons v. American Tobacco Co.,* No. Civ. A. 96-0881, 1997 WL 809677, at *3 (S.D.Ala. Sept. 30, 1997) (denying remand where misjoinder of plaintiffs was "transparent artifice to defeat diversity" and therefore constituted fraudulent joinder) (citing *Tapscott* ); *Koch v. PLM Int'l,* No. Civ. A. 97-0177, 1997 WL 907917 (S.D.Ala. Sept. 24, 1997) (same).

FN57. It is worth noting that *Tapscott* 's " egregious" standard has been criticized even in the context of misjoinder of defendants. *See, e.g.,* 14B Wright § 3723 at 658 (noting that "the complexity [involved in a federal court's decision regarding removal jurisdiction] is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent misjoinder is accepted and because numerous additional decisions will be needed to clarify the distinction."). Wright suggests one way to avoid the morass is for defendants to remove only after obtaining severance of misjoined

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiffs in state court. This suggestion highlights the inconsistency of requiring stricter standards for severing misjoined parties once cases are removed to federal court; although the inconsistency may be justified in the case of misjoined defendants, for the reasons discussed above, it is not justified in the case of misjoined plaintiffs.

Accordingly, as the plaintiffs have been misjoined, and the misjoinder of plaintiff Dupree in particular destroys diversity, the Court will sever her action for purposes of maintaining the defendants' right to removal of the remainder of the action.

### 2. Bell

[6] In *Bell*, eleven plaintiffs have joined to sue Warner-Lambert, five physicians, and three pharmacists. As discussed above, the pharmacists have been joined improperly, and their citizenship therefore is disregarded for the purposes of determining this Court's jurisdiction. Only five of the plaintiffs in *Bell* assert claims against a non-diverse physician defendant. [FN58] The defendants do not argue that the defendant-physicians have been fraudulently joined, but rather that the five plaintiffs with claims against the non-diverse physicians have been misjoined with the plaintiffs asserting no claim against non-diverse defendants. If the eleven plaintiffs in *Bell* have been properly joined, the entire case would have to be remanded to the Mississippi state courts, as the claims against the five Mississippi doctors would destroy complete diversity.

FN58. Plaintiffs Henry Andrews, Mary Gavin, David Burden, Willie Louise Campbell, and Agnes Poole assert claims of medical malpractice, negligence, and failure to warn against their respective physicians.

As noted earlier, the first test for whether plaintiffs have been properly joined is whether they make at least one claim that arises out of the same

transaction or occurrence or series of transactions or occurrences as the claims of their co-plaintiffs. [FN59] Because the five plaintiffs with allegations against their physicians allege a specific source of Rezulin, as well as a specific series of occurrences that led to their injuries, that is different from the series of occurrences related to the injuries of the remaining six plaintiffs, they have been misjoined. As discussed above, the Court recognizes the cost and efficiency benefits to joined plaintiffs, but these benefits must be weighed against a defendant's right to removal. Because the misjoinder of the five plaintiffs with claims against non-diverse physicians would destroy complete diversity, the Court will sever those five actions so as to preserve the defendants' right to removal in the remaining actions.

FN59. *See supra* note 39.

### III. Texas Actions

[7] In two Texas actions, [FN60] defendants have removed on the theory that plaintiffs improperly have joined physicians (and, in *149 *Brown*, a nurse and a health provider practice group). They contend that plaintiffs in each failed to file an expert report with the state court as required by Texas statute in order to pursue a medical malpractice claim against a physician or health care provider, thus rendering the claims against the non-diverse health care providers insufficient and making the cases removable. [FN61]

FN60. The actions are *Brown v. Warner-Lambert Co.*, No. 01 Civ.1967 and *Soto v. Warner Lambert Co.*, No. 01 Civ. 976.

FN61. *See* Tex. Civ. Code Ann. Art. 4590i § 1301(d) (Vernon 2000).

The relevant statute requires the filing of such a report no later than 180 days after the filing of the action and, in the event of the claimant's failure to do so, requires the court, "on the motion of the affected physician or health care provider," to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136

168 F.Supp.2d 136
(Cite as: 168 F.Supp.2d 136)

Page 14

dismiss the action with prejudice. It provides three possible means of extending the deadline for filing. First, the court may "for good cause shown after motion and hearing" extend the time period by thirty days.[FN62] Second, the affected parties may agree in writing, signed by both parties and filed in the court, to extend the deadline. [FN63] Third, the court may order a thirty day grace period for compliance if upon a hearing it is shown that the failure of the claimant was not intentional or the result of conscious indifference but rather the result of accident or mistake. [FN64] Under the statute, " ' affected parties' means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted under this section and does not include other parties to an action who are not directly affected by that particular act or agreement." [FN65]

> FN62. *Id.* § 1301(f).

> FN63. *Id.* § 1301(h).

> FN64. *Id.* § 1301(g).

> FN65. *Id.* § 1301(r)(1).

Defendants argue that plaintiffs failed to file their expert reports before the statutory deadline, that they do not meet any of the three statutory requirements for extension of the deadline, and that a Texas state court would be obliged under the statute to dismiss the claims against the providers. As a result, defendants argue, there is no possibility that plaintiffs may recover against them, rendering the non-diverse health care providers fraudulently joined and the action removable. Plaintiffs counter that the Texas statute makes clear that dismissal is mandated only "on the motion of the affected physician or health care provider" [FN66] and that no motion has been made. Accordingly, they contend that the non-diverse citizenship of these providers is material.

> FN66. *Id.* § 1301(e).

Defendants rely principally on *Garza v. Pfizer, Inc.*

FN67 and *American Transitional Care Centers of Texas, Inc. v. Palacios* [FN68] for the proposition that the lack of motions to dismiss by the providers does not matter. Neither case, however, supports the weight defendants place upon it. *American Transitional* involved, *inter alia,* a motion by the defendant hospital to dismiss for failure to file an expert report by the deadline. Thus, it did not address whether a court must, or even could, dismiss an action for failure to comply with the deadline absent motion by either a health care provider or physician defendant.[FN69]

> FN67. No. M-01-028 (S.D. Tex. April 19, 2001), *adopted and approved* May 9, 2001, *motion for reconsideration pending* (attached in Def. Compendium of Auth., Ex. 2).

> FN68. 46 S.W.3d 873, 2001 WL 491205 (Tex. May 10, 2001).

> FN69. Although the Court notes in passing that "if the plaintiff fails within the time allotted ... to provide the expert reports ... the trial court must sanction the plaintiff by dismissing the case with prejudice," it does so merely to cursorily summarize Section 1301(e) for background purposes; the section described by the Court is *dicta* and in fact not at all pivotal to the case, which concerns the adequacy of a report filed within the extended deadline allotted pursuant to Sections 1301(f) and (g) following the hospital's motion to dismiss. Certainly it does not trump the clear statutory language of Section 1301(e).

**\*150** In *Garza,* Pfizer removed an action based on plaintiff's failure to file an expert report by the statutory deadline, although the physician defendant had not moved to dismiss the case against him. The magistrate judge, and subsequently the district court, found that the physician defendant's failure to move for a dismissal was not fatal to Pfizer's removal because "Section 1301(e) ... gives courts virtually no latitude in the consideration of extraneous and subjective factors." [FN70] Yet the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136                                                                          Page 15

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

defendant physician's failure to file a motion under Section 1301(e) is not extraneous or subjective; it is an objective barrier to any dismissal by the court. Moreover, in *Garza* the affected parties had signed an agreement to extend the deadline but had not filed it with the Court, thus taking the case out of Section 1301(h).

FN70. *Garza,* No. M-01-028, at 5.

*Garza* therefore is not persuasive on this point. The language of the Texas statute is clear that dismissal of an action for failure to file an expert report requires a motion of either the physician or health care provider defendant. In the absence of any decision to the contrary by the Texas Supreme Court, this Court is bound to assume that the Texas Supreme Court would apply the statute as its text dictates to allow an action against a physician or health care provider to proceed absent those defendants' election to take advantage of Section 1301(e).[FN71] As the physicians in *Brown* and *Soto* have not moved under Section 1301(e),[FN72] this Court finds there is a possibility that plaintiffs could recover against the physicians in these cases. The motions to remand those cases will be granted.

FN71. Section 1301(g) also supports this reading. It crafts the time period for a request for an extension based on accident or mistake around the defendant's motion to dismiss, stating the claimant's motion for an extension "shall be considered timely if it is filed before any hearing on a motion by a defendant under [1301(e) ]." If a court could dispose of a plaintiff's case solely on their failure to file an expert report by the deadline, the timeliness standard for a motion under § 1301(g) would be rendered a nullity.
The Court notes also that the statute's clear language does not on its face undermine the statute's goals of alleviating vexatious and frivolous litigation, *see* Tex. Civ. Stat. Ann. Art. 4590i § 1.02(a). In not mandating dismissal absent the consent of physician and hospital defendants, the

statute allows those faced with medical malpractice suits the option of defending the case on the merits-an option physicians with a particularly strong defense might prefer to prevailing "on a technicality."

FN72. In fact, James Terry, M.D., the physician defendant in *Brown,* has submitted a brief in support of plaintiffs' motion to remand.

### *IV. Hopkins*

The plaintiff in *Hopkins v. Pfizer Inc.*[FN73] also moves to remand, asserting that the claim does not involve the requisite $75,000 matter in controversy. As this Court explained in *Rezulin I:*

FN73. No. 01 Civ. 484.

"Defendants, as the party invoking federal jurisdiction, carry the burden of 'proving to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.' On the other hand, the focus of defendants' efforts need not be whether the plaintiff is likely to secure an amount greater than $75,000. Rather, the focus is on the claim, and while 'plaintiff is the master *151 of its claim whose monetary demand is to be accorded deference,' a plaintiff's claim must be made in good faith. To determine whether defendants' burden has been met, this Court looks not only to the complaint, but to any other evidence in the record."[FN74]

FN74. *Rezulin I,* 133 F.Supp.2d at 295-96 (quoting *United Food and Commercial Workers Union v. CenterMark Properties Meriden Sq., Inc.,* 30 F.3d 298, 305 (2d Cir.1994); citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982)).

[8] The plaintiff in *Hopkins* purports to represent a nationwide class consisting of "[a]ll persons who

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 16

took Rezulin from January 1, 1997 through March 22, 2000 and that have not been advised by a medical professional that she or he has any symptoms as a result of Rezulin ingestion." [FN75] Plaintiff seeks "injunctive and equitable relief" in the form of a

FN75. *Hopkins* Cpt. ¶ 62.

"court-supervised medical monitoring trust fund to provide for a medical monitoring program that would include ... (a) Locating persons who use or used Rezulin and notifying them of the potential harm from the drug; (b) Gathering and forwarding to treating physicians information related to the diagnosis of injuries that may result from the use of Rezulin; and (c) Aiding in the early diagnosis of resulting injuries through ongoing testing and monitoring of Rezulin users." [FN76]

FN76. *Id.* ¶¶ 86, 83. Similar claims are made in the PEC's Consolidated Amended Class Action Complaint.

Hopkins argues that the Court lacks jurisdiction because, under *Synder v. Harris* [FN77] and *Zahn v. International Paper Co.,* [FN78] claims of individual class members may not be aggregated to meet the minimum jurisdictional amount. Defendants respond that a request for a medical monitoring trust fund falls under the "common fund" exception to the anti-aggregation principle for instances in which plaintiffs seek "to enforce a single title or right, in which they have a common and undivided interest." [FN79] In such situations, federal jurisdiction attaches "if their interests collectively equal the jurisdictional amount." [FN80]

FN77. 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

FN78. 414 U.S. 291, 294-300, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

FN79. *Zahn,* 414 U.S. at 294, 94 S.Ct. 505 (quoting *Troy Bank of Troy, Indiana v.*

*G.A. Whitehead & Co.,* 222 U.S. 39, 40-41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)). *See also Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1422-23 (2d Cir.1997).

FN80. *Zahn,* 414 U.S. at 294, 94 S.Ct. 505.

Plaintiff argues that her case does not fall under the "common fund" exception because Second Circuit case law holds that (1) a common and undivided interest "only exists when there is a single sum of money (or *res* ) against which there might be claims and as to which individual plaintiffs could not bring separate actions without diminishing the claims of other claimants;" (2) the value of the claims asserted must be analyzed in terms of the benefit conferred upon the plaintiff, rather than the cost to defendant; and (3) that a non-pecuniary, conjectural benefit may not be used as a basis for establishing jurisdiction. [FN81]

FN81. Pl. Reply Mem. at 3-4.

Plaintiff overstates the law in this Circuit. In *Gilman v. BHC Securities, Inc.,*[FN82] **\*152** the Court merely noted that the " 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy,' " and that such matters "cannot be adjudicated without implicating the rights of everyone involved with the res." [FN83] *Gilman* did not specifically limit common fund status, as plaintiff would have it, to situations involving a limited fund. Rather, it more broadly characterized claims that might particularly lend themselves to aggregation and even cited as an example of proper aggregation "an action by several family members of the same family to secure family social services in which they shared a common and undivided interest." [FN84] That example involved neither a *res* nor a set limit on possible recovery to all plaintiffs. [FN85]

FN82. 104 F.3d 1418.

FN83. *Id.* at 1423 (quoting *Bishop v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

*General Motors Corp.,* 925 F.Supp. 294, 298 (D.N.J.1996)).

FN84. *Id.* (citing *Black v. Beame,* 550 F.2d 815, 818 (2d Cir.1977)).

FN85. Plaintiff cites also *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291 (2d Cir.2000) and *Rock Drilling Local Union No. 17 v. Mason & Hanger Co.,* 217 F.2d 687 (2d Cir.1954), *cert. denied,* 349 U.S. 915, 75 S.Ct. 604, 99 L.Ed. 1249 (1955), but these cases are inapposite. Although plaintiffs in *Mehlenbacher* sought injunctive relief in the form of cleanup of a mine collapse, stabilization of the mine and flood control, they primarily sought compensatory and punitive damages for individual personal injuries suffered as a result of the mine's collapse. The Court appeared to deny aggregation on that ground, as it did not even address the claims for injunctive relief. *See Mehlenbacher,* 216 F.3d at 296-96 (holding claims not aggregable because " they seek recovery for their losses as individuals only," and citing *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.,* 988 F.2d 559, 563 (5th Cir.1993), which denied aggregation for similar personal injury claims). *Rock Drilling* involved a claim for damages suffered by union members as a result of the union leader's payment of a $36,000 bribe; the Court denied aggregation because plaintiff's purported " collective" claim for the $36,000 was really a claim "on behalf of separate individuals for the damage suffered by each " as a result of the bribe.

[9] Second, although it is true that when a claim seeks primarily equitable relief, as is the case here, [FN86] the amount in controversy is measured "by the value of the object of the litigation" to the plaintiff,[FN87] one method of measuring the value of such a fund to the plaintiff is by reference to the cost to the defendant. This method does not shift

the viewpoint from which value is determined or to quantify value that is otherwise speculative or conjectural; rather, it acknowledges the reality that a medical monitoring fund must be funded fully for each individual plaintiff to receive whatever benefits might result. As Judge Rakoff explained in *Katz v. Warner-Lambert* *153 *Co.,*[FN88] "in order to receive the putative benefits of the contemplated medical research, a plaintiff would have either to fund such research herself or prevail in [the] lawsuit." [FN89]

FN86. *See Barnes v. American Tobacco Co.,* 161 F.3d 127, 132 (3d Cir.1998), *cert. denied,* 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999) (court-supervised medical monitoring fund is "paradigmatic request for injunctive relief"); *In re Diet Drugs,* No. Civ. A. 98-20626, 1999 WL 673066 (Aug. 26, 1999) (page numbers unavailable) (citing *Barnes; Gibbs v. E.I. DuPont De Nemours & Co.,* 876 F.Supp. 475, 479 (W.D.N.Y.1995)); *Katz v. Warner-Lambert Co.,* 9 F.Supp.2d 363, 364 (S.D.N.Y.1998) ("A claim for a medical monitoring fund is injunctive in nature." (citing *Doyle v. Coombe,* 976 F.Supp. 183, 185 n. 1 (W.D.N.Y.1997)); *Craft v. Vanderbilt Univ.,* 174 F.R.D. 396, 406 (M.D.Tenn.1996).

FN87. *Katz,* 9 F.Supp.2d at 364 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383; *Kheel v. Port of New York Auth.,* 457 F.2d 46, 49 (2d Cir.1972); *Bernard v. Gerber Food Products. Co.,* 938 F.Supp. 218, 221 (S.D.N.Y.1996)).

FN88. 9 F.Supp.2d 363.

FN89. *Id.* at 365. *See also In re Diet Drugs,* 1999 WL 673066 ("value of the litigation to each class member in obtaining the benefits of diagnostic testing and medical research is reasonably likely

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 F.Supp.2d 136

168 F.Supp.2d 136
**(Cite as: 168 F.Supp.2d 136)**

to exceed $75,000").

Plaintiff attempts to distinguish *Katz,* arguing that her claim seeks only medical monitoring and not research. However, defendants have submitted an affidavit from a managing director of Marsh, U.S.A., the world's largest insurance broker and provider of health and employment benefits administration, the subsidiaries of which "are familiar with the cost of administering court-ordered medical monitoring programs and have prepared bid packages for such programs." [FN90] It states that the administration of the fund that plaintiff seeks "would include, among other things, claim forms, selection of and consultation with medical personnel, verification of expenses, data collection, record retention, call centers, training of administrative personnel, as well as development of computer programs" and, even putting aside the cost of the medical monitoring itself, "the base cost for the administration of this fund and establishment of this program would be greater than $75,000." [FN91] Plaintiff has submitted no competent evidence in response to this affidavit. Accordingly, even assuming plaintiff's requested fund would not include medical research, defendants have met their burden of establishing to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.

> FN90. Def. Comp. of Auth. Ex. 10 (Connolly Aff.) ¶¶ 1, 2. Connolly also attests to having experience regarding medical monitoring, as he was "the only non-party Board Member of the Love Canal Medical Trust Fund," he has "testified before Congress concerning tort issues," and he has "served as an Advisor to the American Law Institute Reporters' Study of Enterprise Liability." *Id.*

> FN91. *Id.* ¶ 3.

### *V. Conclusion*

The motions to remand in *Floyd,* No. 00 Civ. 965, *White,* No. 00 Civ. 966, *Cochran,* No. 01 Civ. 972, and *Hopkins,* No. 01 Civ. 484, are denied. The

motions to remand in *Brown,* No. 01 Civ.1967, and *Soto,* No. 01 Civ. 976 are granted.

The motions to remand in *Polehouse,* No. 01 Civ. 971, and *Bell,* No. 01 Civ. 973, are disposed of as follows:

1) In *Polehouse,* plaintiff Ouida Dupree's action is severed from the actions of her co-plaintiffs, pursuant to Rule 21 of the Federal Rules of Civil Procedure. Plaintiff Dupree's motion to remand is granted. The motions to remand of the remaining plaintiffs in the *Polehouse* action are denied.

2) In *Bell,* the actions of plaintiffs Henry Andrews, Mary Gavin, David Burden, Willie Louise Campbell, and Agnes Poole are severed from the actions of their co-plaintiffs, pursuant to Rule 21 of the Federal Rules of Civil Procedure. The motions to remand of plaintiffs Andrews, Gavin, Burden, Campbell, and Poole are granted. The motions to remand of the remaining plaintiffs in the *Bell* action are denied.

SO ORDERED.

S.D.N.Y.,2001.
In re Rezulin Products Liability Litigation
168 F.Supp.2d 136

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 3
*Simmons v. Wyeth Laboratories, Inc., 1996* WL 617492 (E.D.Pa. 1996)

Westlaw.

Not Reported in F.Supp.                                                           Page 1

Not Reported in F.Supp., 1996 WL 617492 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

▷
Simmons v. Wyeth Laboratories
E.D.Pa.,1996.
Only the Westlaw citation is currently available.
    United States District Court, E.D. Pennsylvania.
              Kerry SIMMONS, et al.
                        v.
        WYETH LABORATORIES, INC., et al.
              Angela NEWKIRK, et al.
                        v.
        WYETH LABORATORIES, INC., et al.
                Kasey MILES, et al.
                        v.
        WYETH LABORATORIES, INC., et al.
              Jodee JORGENSON, et al.
                        v.
        WYETH LABORATORIES, INC., et al.
        **Nos. CIV.A.96-CV-6631, CIV.A.96-CV-6686,**
        **CIV.A.96-CV-6728, CIV.A.96-CV-6730.**

                  Oct. 24, 1996.

                   *MEMORANDUM*
RENDELL, J.

                   *BACKGROUND*

**\*1** I have pending before me four cases in which plaintiffs seek damages against defendants Wyeth Laboratories, Incorporated ("Wyeth") and American Home Products Corporation ("American Home") arising out of the implantation of Norplant, a contraceptive marketed by defendants.

In each of the cases, different numbers of plaintiffs have gathered together, forty-eight in *Simmons v. Wyeth,* thirty-five in *Newkirk v. Wyeth,* fifty in *Miles v. Wyeth,* and twelve in *Jorgenson v. Wyeth,* to state precisely the same averments and claims. [FN1]

        FN1. In light of the similarities, both in

form and substance, between the four complaints, I will refer to a generic "Complaint" in citing to the factual averments by paragraph number, since such number will be the same for all four complaints.

The factual averments consist primarily of a recitation of defendants' actions in researching, marketing, and otherwise promoting the drug, with allegations that plaintiffs, generally, suffered economic loss and harm, including physical injuries consistent with the various adverse side effects allegedly associated with the use of Norplant, as well as mental and emotional distress as a result of the uncertainties and fear surrounding use of the drug. *See* Complaint ¶ 23.

The allegations of subject matter jurisdiction in each of the complaints are identical, consisting of the blanket statement that none of the plaintiffs is a citizen or resident of Pennsylvania, that defendant Wyeth is a New York corporation with a principal place of business in Pennsylvania, and that defendant American Home is a Delaware corporation with a principal place of business in New Jersey. *See* Complaint ¶¶ 1-5.

The allegation of amount in controversy is a blanket allegation that as to each plaintiff the amount in controversy exceeds $50,000. *See* Complaint ¶ 4. Plaintiffs state eight claims for relief: strict product liability, negligence, breach of express warranty, breach of implied warranty, Magnuson-Moss Warranty Act, misrepresentation, intentional infliction of emotional distress, and fraud.

Plaintiffs do not allege the exact nature of their injuries or damages, other than averring that plaintiffs experienced one or more of numerous injuries and side effects.[FN2] *See* Complaint ¶ 21-23, 75.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 2

Not Reported in F.Supp., 1996 WL 617492 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN2. Plaintiffs allege that the side effects caused by Norplant include menstrual disruptions, headaches, nervousness, nausea, dizziness, enlargement of the ovaries or fallopian tubes, dermatitis, acne, change in appetite, blood vessel abnormalities, weight gain, mastalgia, hirsutism or alopecia, skin discoloration, numbness or pain in the arm or hand, and infection of, and numbness or pain in, the implantation site. *See* Complaint ¶¶ 21-23.

Plaintiffs also allege that they suffer from emotional distress as a result of the uncertainty surrounding the use of Norplant, as well as fear of further medical complications and injury, severe anxiety, worry, fright, mental and emotional pain, stress, and anxious and emotional trauma. *See* Complaint ¶¶ 23, 75.

## DISCUSSION

I convened a status conference on these cases on October 16, 1996, in order to raise concerns with respect to the allegations of diversity and the joinder of parties in these cases. The concerns are not merely based on the cases pending before me, but on the fact that numerous other plaintiffs have joined together in numerous other complaints filed in this district, stating exactly the same claims in exactly the same language, lacking in specific allegations as to diversity of citizenship and specific facts supporting the joinder of the claims of the individual plaintiffs.

It is appropriate for me to raise these issues. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 184 (1936) (noting that a court may inquire into jurisdictional facts even where the parties do not raise the issue); *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 189 (D.V.I.1975) (noting that " severance [in the case of misjoinder] can be ordered upon the court's own initiative").

**\*2** At the status conference, counsel advised me that many of the cases pending in other districts had been transferred to the Multi-District Litigation

Panel transferee court, the United States District Court for the Eastern District of Texas, and that Judge Schell, to whom the cases have been assigned for pretrial purposes, had addressed the issue of the propriety of the joinder of many plaintiffs before him, finding that such joinder was proper. *See In Re Norplant Contraceptive Products Liability Litigation,* 1996 WL 566929 (E.D.Tex. October 4, 1996). Judge Schell reasoned that the joined plaintiffs met the standard for joinder under Rule 20, namely their claims arise out of the same transaction or occurrence, or series of transactions or occurrences:

Defendants, in the same series of acts and omissions ... failed in their nationwide promotional materials to adequately warn Plaintiffs of the risks and severity of side effects associated with the use of Norplant ... [and that] Defendants' liability under theories of negligence, misrepresentation, and fraud arises out of the same series of occurrences wherein Defendants failed to adequately warn Plaintiffs, thus satisfying Rule 20(a).

*Id.* at *1 (footnote omitted).

Counsel also informed me that Judge Schell had to date declined to designate this action as a class action, hence the need for several different filings.

As to the issue of pleading diversity of citizenship, plaintiffs' allegations leave open the possibility that one or more plaintiffs are citizens of a state in which a defendant is also a citizen, and thus fail to properly allege diversity of citizenship in order to invoke this court's subject matter jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 182, 184 (1936) (holding, *sua sponte,* that "[i]t is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case"); *Neat-N-Tidy Co., Inc. v. Tradepower (Holdings) Ltd.,* 777 F.Supp. 1153, 1156-57 (S.D.N.Y.1991) (holding that pleadings are deficient where they shelter the possibility that complete diversity does not exist between opposing parties).

As to joinder, I find that there is clearly a tension between the specific requirements of Federal Rule of Civil Procedure 20 and plaintiffs' desire to bring

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 617492 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

all of their claims in one action. In this instance, however, I find that the pleadings before me do not satisfy the requirements of Rule 20, and that I will require severance of these claims in accordance with Federal Rule of Civil Procedure 21. *See* Fed.R.Civ.P. 21; *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 189 (D.V.I.1975) (noting that "severance can be ordered upon the court's own initiative"); 3A James W. Moore, et al., *Moore's Federal Practice* ¶ 21.05[2], at 36 (2d ed.1996) (noting that Rule 21 can be applied to sever claims, thereby converting them into independent actions, where misjoinder has occurred according to the standards of Rule 20).

**\*3** Rule 20 has two specific requirements which must be fulfilled: plaintiffs' claims must arise from the same transaction or occurrence or series of transactions and be based upon a common issue of fact or law. *See In Re Orthopedic Bone Screw Products Liability Litigation,* 1995 WL 428683, at *1 (E.D.Pa. July 15, 1995) [hereinafter *Bone Screw* ]; *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 189-90 (D.V.I.1975). I find the first element-the same transaction or occurrence-lacking here.

Cases construing the Rule 20 requirement for the same transaction or occurrence have focused on whether each of the plaintiffs is stating a claim against the defendant that can be said to have arisen from the same basic set of facts. *See, e.g., Bone Screw,* 1995 WL 428683, at *1-2 (applying the Rule 20 standard and inquiring whether "the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances"); *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc.,* 227 F.Supp. 365, 373-75 (W.D.Wisc.1964).

As indicated by Judge Bechtle in *Bone Screw,* the transaction or occurrence standard of Rule 20(a) requires that "the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances." *Bone Screw,* 1195 WL 428683, at *2. Significantly, Judge Bechtle ruled in favor of severance, finding that " joinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants

have the same or similar device of a defendant manufacturer implanted in or about their spine, is ... not a proper joinder" under Rule 20. *Id.* \*6; *see American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 189-90 (D.V.I.1975); *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc.,* 227 F.Supp. 365, 373-75 (W.D.Wisc.1964) (citing cases, and holding in favor of severance as to four plaintiffs' claims arising out of each plaintiffs' distributor-dealer contract with defendant). *But see Hanley v. First Investors Corp.,* 151 F.R.D. 76 (E.D.Tex.1993); *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.,* 67 F.R.D. 634, 636 (D.Del.1975).[FN3]

> FN3. In *Mesa,* the district court declined to sever the claims of numerous joined plaintiff-franchisees where they arose out of separate franchise agreements with the defendants, because the court found that plaintiffs had alleged identical fraudulent and conspiratorial activity arising out of the materially indistinguishable agreements. *Id.* at 637. Moreover, the *Mesa* court distinguished *Sun-X* on the grounds that *Mesa,* unlike *Sun-X,* involved allegations of conspiracy and a "singular communication" which gave rise to the plaintiffs' claims of fraud. *Id.* at 637 n. 6 (noting that "plaintiffs predicate much of their claim upon defendants' communication of identical information through identical documents to each plaintiff"). *Sun-X* is thus more in line with the view of severance which I adopt here, since the complaints before me do not aver conspiracy or that each plaintiff specifically received information identical in substance and in source to that received by all other plaintiffs, such that there is a " single communication" which forms the basis for plaintiffs' claims.

A finding that joinder is proper in the cases pending before me would mean that the similarity of defendants' conduct complained of by each of the plaintiffs, without more, is a sufficient basis for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1996 WL 617492 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

joinder. I find, however, that, consistent with Judge Bechtle's ruling in the *Bone Screw* litigation, some similarity of experience among the plaintiffs is necessary in order to find that plaintiffs' claims arise out of the same transaction or occurrence or series of transactions or occurrences. *See Bone Screw,* 1195 WL 428683, at *2. For example, the marketing of defective automobiles by an automobile manufacturer will not, absent class action status, support joinder in one action of all those harmed by the defect; only those involved in the same accident are properly joined.

**\*4** Notwithstanding the view expressed by Judge Schell that the common basis for plaintiffs' claims, namely, the misrepresentations or failures to warn by defendants, satisfied the "transaction or occurrence or series of transactions or occurrences" requirement under Rule 20, I believe that Judge Bechtle's analysis is the better view, and requires a finding that plaintiffs here have not joined claims that arise out of the same transaction, occurrence, or series of transactions or occurrences.

While in the *Bone Screw* litigation Judge Bechtle designated the transactions or occurrences which would be the basis for joinder, I do not have a sufficient factual basis, based on the pleadings, to even speculate as to how the plaintiffs before me may have been involved in the same transaction or occurrence or series of transactions or occurrences. I therefore will only require that the claims be severed and repled consistent with a reading of " same transaction or occurrence or series of transactions or occurrences" that comports with the analysis in *Bone Screw* and *Sun-X*. For instance, if six of the plaintiffs received identical information from the defendants through identical means or sources at the same point in time, and were implanted with the drug by the same doctor at the same facility, joinder under the standards of Rule 20 may well be appropriate.

In light of the foregoing, I will sever these claims and require plaintiffs, within fifteen days from the date of this Memorandum Opinion, to: (1) replead diversity jurisdiction and allege facts regarding each plaintiff's citizenship, in order to affirmatively and properly plead the basis for diversity of citizenship;

and, (2) refile their complaints such that only those plaintiffs whose claims arise from the same transactions or occurrences or series of transactions or occurrences are joined as plaintiffs in a single complaint.

I should note that while plaintiffs' counsel argues that these claims could be severed at a later date if it appears necessary, I opt for compliance with Rule 20 at this stage of the case. Further, if these matters are transferred and thereafter referred back to this court after pretrial proceedings in the transferee court, any attempt to sever them at that point would be met with challenges based upon the extent of the proceedings to date, and I would be faced with an unwieldy situation of having to divide up the 145 plaintiffs in the four pending cases for purposes of trial.[FN4] I believe that judicial economy requires severance at this point in time, with the consolidation of some cases for purposes of trial a possibility at a later date when the facts of each case have been fully developed.

> FN4. The unwieldy situation which I intend to prevent here is like the one which confronted the district court in *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164, 189-90 (D.V.I.1975), and which prompted the following observation from that court:
> Clearly, to have let this litigation proceed so far apace without remedying this situation earlier was a mistake. Having now realized the error, I cannot aggravate matters by sitting back and doing nothing. Some sort of remedial or carving procedure is clearly mandated. Various provisions of the Federal Rules, such as Fed.R.Civ.P. 20(b) and 42(b), were considered but eliminated for reasons that I need not enumerate. I have, however, selected Fed.R.Civ.P. 21 as the most appropriate "surgical scalpel."
> *Id.* at 189-90.

An appropriate order follows.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 617492 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**


ORDER

AND NOW, this 24th day of October, 1996, it is
hereby ORDERED that:

(1) plaintiffs shall, within fifteen days from the date
of this Order, replead diversity jurisdiction to
affirmatively aver facts regarding the citizenship of
each party; and

*5 (2) the claims of the plaintiffs shall be severed in
accordance with the foregoing Memorandum
Opinion, and plaintiffs shall, within fifteen days
from the date of this Order, refile their complaints
so that only those plaintiffs whose claims arise from
the same transactions or occurrences or series
thereof shall be joined as plaintiffs in a single
complaint.

E.D.Pa.,1996.
Simmons v. Wyeth Laboratories
Not Reported in F.Supp., 1996 WL 617492
(E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 4
*Papagiannis v. Pontikis*,  108 F.R.D. 177 (N.D.Ill. 1985)

Westlaw.

108 F.R.D. 177                                                                                    Page 1

108 F.R.D. 177, Fed. Sec. L. Rep. P 92,428, 3 Fed.R.Serv.3d 1041, RICO Bus.Disp.Guide 6181

**(Cite as: 108 F.R.D. 177)**

▷

United States District Court, N.D. Illinois, Eastern Division.
Thomas PAPAGIANNIS, et al., Plaintiffs,
v.
John PONTIKIS, et al., Defendants.
No. 85 C 09474.

Nov. 15, 1985.

Two plaintiffs sued certain individuals and related corporations, claiming to have been bilked by them in oil well investments. The District Court, Shadur, J., held that the two plaintiffs' complaints represented impermissible joinder of separate claims.

Order accordingly.

West Headnotes

**[1] Racketeer Influenced and Corrupt Organizations ☞25**
319Hk25 Most Cited Cases
    (Formerly 83k82.71)
One essential ingredient of every civil Racketeer Influenced and Corrupt Organizations Act crime [ 18 U.S.C.A. §§ 1961-1968] is a pattern of racketeering activity.

**[2] Federal Civil Procedure ☞251**
170Ak251 Most Cited Cases
    (Formerly 83k82.71, 83k82.72)
Each victim of Racketeer Influenced and Corrupt Organizations Act crime [18 U.S.C.A. §§ 1961-1968] may sue RICO violator, adducing evidence of offense against other victim to meet proof requirements of statute as to "pattern," but whether victims can sue together remains function of Civil Procedure Rule 20(a), which governs joinder of plaintiffs in single lawsuit. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[3] Federal Civil Procedure ☞266**
170Ak266 Most Cited Cases
Under Civil Procedure Rule 20(a), governing joinder of plaintiffs in single lawsuit, claims of fraudulent inducements to purchase working interests in oil wells could not be joined, where cozening of two plaintiffs did not involve "same transaction or occurrence," and did not occur in same series of transactions or occurrences, so that joinder of claims would not satisfy Rule 20(a) goal of permitting all reasonably related claims for relief by different parties to be tried in single proceeding. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[4] Federal Civil Procedure ☞266**
170Ak266 Most Cited Cases
For purpose of joinder, characterization of acts as being part of "same series of transactions or occurrences" does not fairly apply to two victims' wholly separate encounters with confidence man, simply because he followed same routine in cheating each of them. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.
*178 Jerome F. Crotty, Rieck & Crotty, P.C., Chicago, Ill., for plaintiffs.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Thomas and Angie Papagiannis ("Papagiannises") and Nicholas Saltouros ("Saltouros") have sued John Pontikis ("Pontikis") and Gus Hormovitis ("Hormovitis"), individually and doing business as J & J Petroleum Co. ("J & J"), Milton Marks ("Marks"), individually and as agent of Continental Energy Corporation ("Continental"), and Continental itself, each plaintiff claiming to have been bilked by defendants in oil well investments. Because the Complaint represents an impermissible joinder of separate claims, this Court sua sponte directs plaintiffs' counsel to elect on or before November 25, 1985 which plaintiffs' claims to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

108 F.R.D. 177, Fed. Sec. L. Rep. P 92,428, 3 Fed.R.Serv.3d 1041, RICO Bus.Disp.Guide 6181

**(Cite as: 108 F.R.D. 177)**

dismiss (without prejudice), failing which the entire Complaint will be dismissed (also without prejudice).

Papagiannises allege they were fraudulently induced to purchase from Marks, through solicitation by Pontikis and Hormovitis, a working interest in Oil Well No. 13 drilled on an oil and gas leasehold. Saltouros makes like allegations as to a working interest in a different well (Oil Well No. 12) on the same leasehold. Each entered into a separate purchase contract at a different time (the deals were made eight days apart). Each of the plaintiffs asserts claims under Securities Act of 1933 ("1933 Act") § 12(2) (Count I as to Papagiannises, Count IV as to Saltouros), 1933 Act § 17(a)(2) (Count II as to Papagiannises, Count V as to Saltouros), 1933 Act § 12(1) (Count III as to Papagiannises, Count VI as to Saltouros) and the Illinois Blue Sky Laws (Count XI as to Papagiannises, Count XII as to Saltouros). Though the nature of the alleged misrepresentations to each investor was much the same, and that may reflect a pattern of conduct by defendants (more of this later), nothing in the Complaint even hints at any linkage between the plaintiffs or between the making of the separate representations to each.

Saltouros also complains of a similar and earlier scam by J & J (about one and one-*179 half months before he bought into Oil Well No. 12), resulting in Saltouros' purchase of an interest in a wholly different well on a wholly different leasehold. On that investment Saltouros invokes 1933 Act §§ 12(2) and 17(a)(2) (Count VII), 1933 Act § 12(1) (Count VIII) and the Illinois Blue Sky Laws (Count XIII). Finally Saltouros charges he was fraudulently induced to purchase shares of Continental in still another transaction, this time claiming under 1933 Act §§ 12(2) and 17(a)(2) (Count IX) and the Illinois Blue Sky Laws (Count XIV).

[1][2] Only Complaint Count X seeks to join the threads of those disparate claims. Not surprisingly in today's litigation climate, Papagiannises and Saltouros have selected the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961-1968 as their point of intersection. [FN1] But (also unfortunately not surprisingly) their counsel appears not to have thought through the conceptual underpinnings for civil RICO claims:

> FN1. Would any self-respecting plaintiffs' lawyer omit a RICO charge these days?

1. One essential ingredient of every such claim is a "pattern of racketeering activity." [FN2] *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14 and 3287, 87 L.Ed.2d 346 (1985).

> FN2. This opinion's silence as to the other RICO elements involves no implication either way as to whether or not they have been met by Count X. It is simply premature to address the subject in its entirety.

2. Though the "pattern" requirement has been and continues to be seriously misinterpreted despite the Supreme Court's signposts in *Sedima,* [FN3] it is clear that a malefactor's perpetration of fraudulent activities on more than one victim, while following the same modus operandi, is indeed a "pattern" for RICO purposes. *United States v. Yonan,* 622 F.Supp. 721, 728 (N.D.Ill. 1985); see *Inryco,* 615 F.Supp. at 831-33.

> FN3. In *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 831-33 (N.D.Ill.1985) this Court discussed at some length the obvious message conveyed by the Supreme Court's plainly deliberate insertion of its dicta (cited in the text of this opinion) as to the meaning and significance of the "pattern" requirement. In that light, it is startling to read such an opinion as that just written by one of the elder statesmen of the federal judiciary, Senior Circuit Judge John Minor Wisdom, *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985). As Judge Wisdom and his colleagues on the panel view it, any two related mailings are *still* enough for a "pattern"--the opinion wholly ignores

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

108 F.R.D. 177, Fed. Sec. L. Rep. P 92,428, 3 Fed.R.Serv.3d 1041, RICO Bus.Disp.Guide 6181

**(Cite as: 108 F.R.D. 177)**

the concept of "continuity" of criminal activity emphasized by Congress and the Supreme Court.

3. What that means is that each victim can sue the RICO violator, adducing *evidence* of the offense against the other victim to meet the proof requirements of the statute as to a "pattern." But whether the victims can sue *together* remains a function of Fed.R.Civ.P. ("Rule") 20(a), which governs the joinder of plaintiffs in a single lawsuit.

[3][4] Once the just-stated principles are understood, the situation here need not detain us long. In Rule 20(a) terms, the cozening of Papagiannises and Saltouros certainly did not involve the "same transaction [or] occurrence." And the situation also does not present the "same ... series of transactions or occurrences," for that characterization does not fairly apply to two victims' wholly separate encounters with a confidence man simply because he follows the same routine in cheating each of them. [FN4] Though the allegedly fraudulent scheme may have been the same as to both victims, face-to-face fraud (as contrasted for example with a securities prospectus misrepresentation) necessarily requires individualized proof.

> FN4. It is as though two persons who fall, wholly independently, for the classic "pigeon drop" swindle two weeks apart were to characterize those swindles as the "same ... series of transactions or occurrences."

Thus joinder of the present claims would not satisfy the Rule 20(a) goal of "permit[ting] all reasonably related claims for relief by ... different parties to be tried in a single proceeding," *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). Plaintiffs' situation is akin to **\*180** that in which Rule 20(a) joinder was rejected in *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc.,* 227 F.Supp. 365, 373-75 (W.D.Wis.1964); and see *Saval v. BL Ltd.,* 710 F.2d 1027, 1031-32 (4th Cir.1983).

Accordingly Papagiannises and Saltouros have impermissibly joined forces as plaintiffs. They are given until November 25, 1985 to amend the Complaint by dropping the claims of one or the other (without prejudice, of course to the refiling of those claims in another lawsuit), failing which the present Complaint will be dismissed in its entirety (again without prejudice).

108 F.R.D. 177, Fed. Sec. L. Rep. P 92,428, 3 Fed.R.Serv.3d 1041, RICO Bus.Disp.Guide 6181

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 5
*Insolia v. Philip Morris Inc.,*  186 F,R,D, 547 (W.D.Wis.1999)

Westlaw.

186 F.R.D. 547

Page 1

186 F.R.D. 547

(Cite as: 186 F.R.D. 547)

**H**

United States District Court,
W.D. Wisconsin.
Vincent INSOLIA and Karen Insolia, Billy Mays
and Phyllis Mays, Maureen Lovejoy
and Lee Lovejoy, on behalf of themselves and as
representatives of a class of
all others similarly situated, Physicians Plus
Insurance Corporation, Wal-Mart
Group Associates, Insurance, Champus, parties
joined pursuant to Wis.Stat. sec.
803.03, Plaintiffs,
v.
PHILIP MORRIS INCORPORATED; R.J.
Reynolds Tobacco Company; Brown & Williamson
Tobacco Corporation; Lorillard Tobacco
Company; Liggett Group Inc.; The
Council for Tobacco Research--U.S.A., Inc.; and
The Tobacco Institute, Inc.,
Defendants.
No. 97-C-0347-C.

April 2, 1999.

Smokers sued tobacco companies, alleging industry-wide conspiracy to deceive plaintiffs regarding ill-health effects smoking. On defendants' motion to sever claims, the District Court, Crabb, J., held that plaintiffs' claims did not arise from same transaction or series of transactions.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure** ☞81
170Ak81 Most Cited Cases

**[1] Federal Civil Procedure** ☞241
170Ak241 Most Cited Cases
Joinder of claims, parties, and remedies is strongly encouraged. Fed.Rules Civ.Proc.Rule 20, 28 U.S.C.A.

**[2] Federal Civil Procedure** ☞81
170Ak81 Most Cited Cases

**[2] Federal Civil Procedure** ☞388
170Ak388 Most Cited Cases
Trial judge has broad discretion to determine when joinder or severance are appropriate. Fed.Rules Civ.Proc.Rules 20, 21, 28 U.S.C.A.

**[3] Federal Civil Procedure** ☞251
170Ak251 Most Cited Cases
Smokers' suits against tobacco companies did not arise from same transaction or series of transactions, and so were improperly joined, despite allegation of industry-wide conspiracy to deceive plaintiffs regarding ill-health effects smoking; evidence needed to prove injury from conspiracy differed for each plaintiff. Fed.Rules Civ.Proc.Rule 20, 21, 28 U.S.C.A.
**\*548** James A. Olson, Lawton & Cates, S.C., Madison, WI, for Vincent Insolia, Karen Insolia.

Thomas J. Bastin, Sr., Brennan, Steil, Basting & MacDougall, Janesville, WI, for State of Wisconsin.

Richard Schmidt, Boardman, Suhr, Curry & Field, Madison, WI, for Physicians Plus Ins.

Michael T. Graham, Jackson, Lewis, Schnitzler and Krupman, Chicago, IL, for Associates' Health and Welfare.

Mullen J. Dowdal, Asst U.S. Attorney, Madison, WI, for Donna Shalala, plaintiff.

Michael L. Zaleski, Quarles & Brady, Madison, WI, for Philip Morris Incorporated.

James Clark, Foley & Lardner, Milwaukee, WI, for R.J. Reynolds Tobacco Company.

Timothy J. Pike, Peterson, Johnson & Murray S.C., Milwaukee, WI, for Brown & Williamson Tobacco

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

186 F.R.D. 547

**(Cite as: 186 F.R.D. 547)**

Corp.

Ralph A. Weber, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI, for B.A.T. Industries P.L.C.

Bruce A. Schultz, Coyne, Niess, Schultz, et al., Madison, WI, for Lorillard Tobacco Company.

Robert B. Raschke, Lindquist & Vennum, Minneapolis, MN, for Liggett Group Inc.

James F. Gebhart, Attorney at Law, Madison, WI, for Hill & Knowlton, Inc.

John H. Schmid, Axley Brynelson, Madison, WI, for The Council for Tobacco Research.

John Koeppl, Attorney at Law, Madison, WI, for The Tobacco Institute, Inc.

OPINION AND ORDER

CRABB, District Judge.

This is a civil action for money damages brought by three former smokers and their spouses against the country's major cigarette manufacturers and two tobacco industry trade organizations. In an order dated December 17, 1998, I denied plaintiffs' motion for class certification. The case is back before the court on defendants' motion to sever the claims of the three sets of plaintiffs into three separate actions pursuant to Fed.R.Civ.P. 21. According to defendants, these claims have been joined improperly under Rule 20 because they do not arise from the same transaction or series of transactions and because they do not share a common question of fact or law. Plaintiffs contend that their claims arise from an industry-wide conspiracy to deceive consumers about the addictive, deadly characteristics of cigarettes. If these arguments sound familiar to readers of my opinion on class certification, it is because the standards for permissive joinder and class certification are alike in some significant ways. Even under the less stringent requirements of Rule 20, plaintiffs' claims are not sufficiently similar to

warrant joining them in a single proceeding. Specifically, I conclude that plaintiffs cannot satisfy the first prong of the standard for permissive joinder because their claims do not arise from the same transaction or series of transactions. Defendants' motion will be granted. Familiarity with the facts and conclusions set forth in earlier opinions is assumed.

[1][2] Under Rule 20, joinder of claims, parties and remedies is strongly encouraged. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Where joinder is inappropriate, claims may be severed pursuant to Rule 21. The trial judge has broad discretion **\*549** to determine when joinder or severance are appropriate. *See Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir.1994); *Intercon Research, Etc. v. Dresser Industries*, 696 F.2d 53, 56 (7th Cir.1982). Rule 20(a) imposes two requirements for proper joinder: 1) the right to relief must be asserted by each plaintiff or defendant and must arise out of the same transaction, occurrence or series of transactions; and 2) some question of law or fact common to all the parties must arise in the action. *See Intercon*, 696 F.2d at 57.

The permissive joinder doctrine is animated by several policies, including the promotion of efficiency, convenience, consistency, *see Hohlbein v. Heritage Mutual Ins. Co.*, 106 F.R.D. 73, 78 (E.D.Wis.1985), and fundamental fairness. *See Intercon*, 696 F.2d at 57-58. These policies, not a bright-line rule, should govern whether the "same transaction" requirement imposed by Rule 20 has been satisfied. *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 20.05[1] (3d ed.1999). Rather than developing a single test, courts evaluate this issue on a case-by-case basis. *See* 7 C. Wright et al., *Federal Practice and Procedure* § 1653 at 382 (2d ed.1986); *McLernon v. Source International, Inc.*, 701 F.Supp. 1422, 1425 (E.D.Wis.1988). Nevertheless, some courts decide the first prong of the permissive joinder standard by asking whether there is a logical relationship between the operative facts and claims of a lawsuit. *See* 7 Wright et al., at § 1653;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

186 F.R.D. 547

186 F.R.D. 547

Page 3

**(Cite as: 186 F.R.D. 547)**

*McLernon,* 701 F.Supp. at 1425; *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974) (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)).

Problems associated with the "same transaction" requirement have arisen often in the context of securities fraud lawsuits involving multiple plaintiffs. The general consensus that emerges from these cases is that Rule 20 demands more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation. *Compare Nor-Tex Agencies, Inc. v. Jones,* 482 F.2d 1093, 1100 (5th Cir.1973) (addition of second plaintiff in securities fraud lawsuit satisfied Rule 20(a) because claims of each plaintiff were based on series of false statements made by same defendant to both plaintiffs so that facts of claims "were inextricably woven together") *with Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 (N.D.Ill.1985) (two plaintiffs could not be joined in same securities action against same defendant even though both claims involved scheme to sell interest in unprofitable oil wells; defendant implemented scheme in separate encounters, each of which necessarily controlled by individualized proof) *and McLernon,* 701 F.Supp. at 1425-26 (several hundred individual plaintiffs fraudulently induced into purchasing unregistered securities could not join in same action without amending their complaint to identify a specific fraudulent statement or statements that had reached all plaintiffs; misrepresentations set forth in original complaint emanated from many different sources). These cases are instructive for two reasons: 1) because of the analogous allegation in this case that defendants acted in concert to deceive plaintiffs regarding the ill-health effects smoking; and 2) because of the central role that this allegation plays in plaintiffs' explanation why their claims arise from the same series of transactions. Indeed, the only thread holding together plaintiffs' argument against defendants' motion to sever is the charge of conspiracy. Without it, there is little that separates these claims from the hundreds of other tobacco

products liability lawsuits pending across the nation and, by extension, no useful purpose served by joining these plaintiffs in the same action. I said as much in the opinion and order denying plaintiffs motion for class certification. *See* dkt. # 169, at 17-18.

Misrepresentation and conspiracy are not the only issues difficult to fit into the transaction requirement of Rule 20. Although there are few cases that address the problems associated with joining multiple plaintiffs in a single products liability action, for obvious reasons, these issues are of crucial importance to plaintiffs' claims and this motion. As illustrated by *In the Matter of Asbestos II Consolidated Pretrial,* No. 86-C-1739, 1989 WL 56181 (N.D.Ill. May 10, 1989), medical and legal causation present formidable obstacles under Rule 20. *Asbestos II* involved a group of over 100 former pipefitters who **\*550** brought a products liability action against several companies responsible for manufacturing asbestos. The district court concluded that these claims did not arise reasonably and logically out of the same series of transactions. *See* 1989 WL 56181 at \*1. Although all of the plaintiffs had contracted pleural asbestosis, the duration and magnitude of this disease varied from plaintiff to plaintiff. *See id.* Even though all of the plaintiffs had belonged to the same union and had been exposed to asbestos products while working at common sites, exposure did not happen "at the same time [or] at the same place." *Id.* Given that each claim turned on unique facts, the specter of jury confusion outweighed any benefit that might accrue to the parties and the judicial system by avoiding multiple lawsuits. *See id.*

[3] With these principles in mind, I conclude that plaintiffs' claims do not arise from the same transaction or series of transactions, as they must in order to satisfy Rule 20. On an abstract level, dissimilarities in the claims brought by plaintiffs suggest that these claims are not related logically to one another. Plaintiffs began smoking at different ages; they bought different brands throughout their years as smokers; and they quit for different reasons and under different circumstances. As

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

already mentioned, the only thread holding these disparate factual scenarios together is the allegation of an industry-wide conspiracy but this theory does not hold up on its terms much less under the weight of the individual issues associated with each plaintiff. In the opinion on class certification, I discussed at length why these claims did not arise from one another for the purpose of the typicality requirement of Rule 23(a). *See* dkt. # 169 at 23-24. Among other observations, I noted that plaintiffs' depositions revealed that tobacco industry propaganda regarding the health effects of smoking reached them, if at all, through a variety of different channels and with varying degrees of success. Complicating matters further, defendants allegedly unleashed the stream of misrepresentations in furtherance of the conspiracy over the course of a 30-year period. As emphasized by defendants, plaintiff Vincent Insolia began smoking almost two decades before the industry hatched its scheme and has not smoked for more than a quarter of a century. By contrast, plaintiffs Billy Mays and Maureen Lovejoy took up the habit in the early '50s and continued to smoke well into '90s. Even if the conspiracy charged held together, serious questions exist regarding medical causation. Again, I raised some of these concerns in the opinion on class certification. For example, medical evidence suggests that the cancer contracted by Mays may be attributable to a work-related accident, not smoking, and that Insolia's risk of developing lung cancer returned to that of a nonsmoker ten years after he quit. *See id.* at 18. With this motion, defendants have submitted the report of a pathologist that casts into doubt whether plaintiff Maureen Lovejoy ever had cancer. *See* Defs.' Rep.Br., dkt. # 256, exh. 4. In the face of this evidence, plaintiffs' argument that causation and other medical issues can be resolved without engaging in highly individualized inquiries is even less persuasive here than it was in their briefs in support of class certification.

The practical implications of allowing these claims to go forward suggests that joinder would not serve the policies underlying rule 20. Plaintiffs disagree, maintaining that joinder would promote efficiency. In doing so, plaintiffs rely heavily on two published opinions, *see Hohlbein v. Heritage Mutual Ins. Co.,*

106 F.R.D. 73 (E.D.Wis.1985) and *Leverence v. U.S. Fidelity & Guaranty,* 158 Wis.2d 64, 462 N.W.2d 218 (Ct.App.1990), and an unpublished order issued by a state circuit court in a tobacco products liability lawsuit pending currently in Memphis, Tennessee. *See Newcomb v. R.J. Reynolds,* No. 89226-TD (Cir.Ct. Shelby Cty., TN February 5, 1998). Like the securities lawsuits, *Hohlbein* arose out of a series of fraudulent statements and omissions made by a defendant to more than one plaintiff--in this case, during the recruitment and employment of four executives by an insurance company. The district court acknowledged that some factual dissimilarities existed between these claims but held that they satisfied Rule 20 because each sprung "from a consistent pattern or practice of employment behavior on the part of a single defendant ..." *See Hohlbein,* 106 F.R.D. at 77. Specifically, the circumstances under which the company hired, employed *551 and fired each plaintiff bore sufficient similarity to one another, even if they were not identical; the company engaged in all of the fraudulent conduct within a discrete two and one-half year time period; at least one material aspect of this conduct applied uniformly to all of the plaintiffs; and the plaintiffs had sustained similar damages. *See id.* at 79. Taken together, these considerations persuaded the court that the additional burden imposed upon the defendant and the risk of jury confusion would be "far outweighed by the practical benefits likely to accrue to all players in the conservation of judicial, prosecutorial, and defensive resources." *Id.*

The other cases relied on by plaintiffs are of marginal precedential value. The order of consolidation from *Newcomb* is accompanied by no analysis or facts. *Leverence* represents an improvement over *Newcomb* but only a minor one. In *Leverence,* 158 Wis.2d at 72, 462 N.W.2d at 222, the court of appeals approved joinder of nearly 800 claims against various defendants for injuries caused by the excessive retention of moisture in the walls and roofs of over 200 pre-fabricated homes occupied by the plaintiffs. The court of appeals summarized the conclusion reached by the trial court but provided no indication how the lower

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

186 F.R.D. 547

186 F.R.D. 547

**(Cite as: 186 F.R.D. 547)**

court reached this conclusion or volunteered any analysis of its own. *See id.* at 95-96, 462 N.W.2d at 231. *See also In re Norplant Contraceptive Products Liab. Litigation,* 168 F.R.D. 579, 581 (E.D.Tex.1996) (finding without analysis that plaintiffs' claims of negligence, misrepresentation, and fraud arise from same transaction because all are premised on allegation that defendants failed to warn of dangers associated with products).

In contrast to the misrepresentations at issue in *Hohlbein,* the life span of the alleged conspiracy perpetrated by defendants is measured in decades, not years. Many of the facts needed to prove the existence of the conspiracy and its effect on plaintiffs Lovejoy and Mays would be irrelevant to the smoking history of plaintiff Insolia, who reached the age of majority before defendants launched the plan and who quit long before it petered out. Rather than the single employer implicated in *Hohlbein,* this case involves five tobacco companies who have manufactured hundreds of brands of cigarettes. It is unlikely that a jury could keep track of which plaintiff smoked which brand and for how long while also retaining a coherent grasp of the minutiae associated with addiction, medical causation and legal causation. But this is not simply a matter of jury confusion. Judicial resources are wasted, not conserved, when a jury is subjected to a welter of evidence relevant to some parties but not others. Confusion can lead to prejudice when there are inadequate assurances that evidence will be weighed against the appropriate party and in the proper context. Defendants are correct that the trial plan proposed by plaintiffs not only fails to address this concern effectively but may actually compound it. Under the plan, a jury would be allowed to decide whether a conspiracy existed, whether cigarettes are unreasonably dangerous and whether defendants intentionally disregarded the rights of plaintiffs--all without regard to reliance, contributory negligence, assumption of risk, addiction and medical causation. These issues, which are normally linked inextricably with a final determination on liability, would be litigated in a subsequent phase. I share defendants' concern that partitioning the trial in such an unorthodox manner would prejudice their

ability to protect their rights effectively.

186 F.R.D. 547

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 6
*Kevin v. Newburger, Loeb & Company,* 37 F.R.D. 473 (S.D.N.Y. 1965)

Westlaw.

37 F.R.D. 473

37 F.R.D. 473, 9 Fed.R.Serv.2d 20a.2, 1

**(Cite as: 37 F.R.D. 473)**

Page 1

▷

United States District Court S. D. New York.
Daniel C. KENVIN, Plaintiff,
v.
NEWBURGER, LOEB & COMPANY et al.,
Defendants.

March 3, 1965.

Proceeding on motion for order severing action with respect to named codefendant. The District Court, Wyatt, J., held that defendant was entitled to severance as liability did not arise out of common transaction, but that severance would not prejudice application by any party for joint trial.

Order accordingly.

West Headnotes

**[1] Federal Civil Procedure ☞242**
170Ak242 Most Cited Cases
Permissive joinder of parties rule permits joinder of parties defendant when liability asserted against each of defendants arises out of same transaction and presents common question of law or fact. Fed.Rules Civ.Proc. rule 20, 28 U.S.C.A.

**[2] Federal Civil Procedure ☞242**
170Ak242 Most Cited Cases
Under permissive joinder of parties rule, there must be common question, and in addition right to relief must arise from same transaction or series of transactions. Fed.Rules Civ.Proc. rule 20, 28 U.S.C.A.

**[3] Federal Civil Procedure ☞1**
170Ak1 Most Cited Cases

**[3] Federal Civil Procedure ☞242**
170Ak242 Most Cited Cases
Where facts asserted against one defendant were in no way factually connected to those asserted against other defendants, requirement of permissive joinder of parties rule that right to relief arise out of same transaction, occurrence, or series of transactions or occurrences was not met even assuming that plaintiff had dealings with all defendants and that there was common arrangement of which all defendants had knowledge, and defendant seeking severance was entitled to it. Fed.Rules Civ.Proc. rule 20(a), 28 U.S.C.A.

**[4] Federal Civil Procedure ☞1953**
170Ak1953 Most Cited Cases
That there was misjoinder of parties and that objecting defendant was entitled to severance did not prejudice application by any party for joint trial. Fed.Rules Civ.Proc. rule 20(a), 28 U.S.C.A.
**\*474** Nason & Cohen, New York City, for plaintiff.

Osmond K. Fraenkel, New York City, for defendant Newburger, Loeb & Co.

WYATT, District Judge.

This is a motion for an order under Rule 21 of the Federal Rules of Civil Procedure 'severing this action with respect to the defendant Newburger, Loeb & Company'.

The complaint sets forth eight claims, each called a 'cause of action' and each alleged to arise out of violations of 'the regulations issued by the Federal Reserve Board * * * and * * * the Securities Exchange Act of 1934.' Jurisdiction of the Court is said to be rested on 15 U.S.C. §§ 78g and 78aa.

The first claim alleges that movant Newburger, Loeb & Company, stock brokers ('Newburger'), 'from October 30, 1959 to January 25, 1962 * * * participated in the arrangement of [the unlawful] extension of credit to the plaintiff for the purchase of securities * * *' and that as a result thereof 'plaintiff has sold the above securities * * * at an aggregate loss of $85,839.66.'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 F.R.D. 473, 9 Fed.R.Serv.2d 20a.2, 1

**(Cite as: 37 F.R.D. 473)**

The second, third and fourth claims are identical with the first except that each contains a different defendant stock broker, a different amount lost and different dates.

The fifth claim alleges that movant Newburger, during the same time period as in the first claim, impliedly warranted that it 'would perform its services in a lawful manner', that it was under a duty to advise the plaintiff of certain credit regulations issued by the Federal Reserve Board, and that plaintiff sold securities for the same loss as in the first claim. The suggestion is that defendant failed to advise plaintiff of the regulations but this is not alleged.

The sixth, seventh and eighth claims are identical with the fifth except that each contains a different defendant stock broker, a different amount lost and different dates.

The moving affidavit states that Newburger 'had nothing to do with any of plaintiff's transactions with any of those other Stock Exchange firms, except that on a single occasion it delivered 100 shares of Alloys Unlimited, Inc. to defendant Reuben, Rose & Co.' It is urged that there was no proper joinder under Fed.R.Civ.P. 20 and that severance should be ordered under Fed.R.Civ.P. 21.

**\*475** The opposing memorandum of law, not sworn to or signed, states that the plaintiff 'had dealings with all of the defendants above named and there was a common factoring arrangement of which all defendants had knowledge. Based upon the common question of fact and the common questions of law, as a matter of convenience to the court, it would be proper to deny the motion for severance.'

To determine whether a claim 'may be severed' for misjoinder under Fed.R.Civ.P. 21 it is here necessary to refer to the principles contained in Fed.R.Civ.P. 18 and 20.

Rule 18(a) provides:
'There may be a like joinder of claims when there are multiple parties if the requirements of Rules

19, 20, and 22 are satisfied.'

Rules 19 and 22 dealing respectively with necessary joinder of parties and interpleader are not here relevant.

Rule 20(a) provides in relevant part as follows:
'All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.'

[1][2] This rule provides for the permissive joinder of parties defendant when the liability asserted against each of the defendants arises out of the same transaction, etc. *and* presents a common question of law or fact. See Music Merchants, Inc. v. Capitol Records, 20 F.R.D. 462, 465 (E.D.N.Y.1957); 3 Moore's Federal Practice, 2722-2725. What this comes down to is that, not only must there be a common question, but also the 'right to relief' must arise from the 'same transaction' or 'series of transactions'.

[3] It is evident that there is a misjoinder of parties in the case at bar in violation of Fed.R.Civ.P. 20(a).

The operative facts asserted against movant Newburger are in no way factually connected to those asserted against the other defendants. The dates, amounts lost and apparently the securities are all different. It would appear that plaintiff has alleged against each of the four defendants distinct and unrelated acts which happen to involve violations of the same statutory duty.

Even assuming that the plaintiff 'had dealings with all of the defendants above named and there was a common factoring arrangement of which all defendants had knowledge' the requirement that the *right to relief* arise out of the same transaction, occurrence or series of transactions or occurrences is plainly not met.

The motion must be and is granted and plaintiff is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

37 F.R.D. 473

37 F.R.D. 473, 9 Fed.R.Serv.2d 20a.2, 1

**(Cite as: 37 F.R.D. 473)**

directed to serve on or before March 15, 1965 amended complaints in which the two claims against Newburger will be set forth in an amended complaint separate from that containing the other claims.

[4] It will probably still prove to be desirable that there be 'a joint * * * trial' of all the claims against the four defendants, as provided for in Fed.R.Civ.P. 42(a). See Stanford v. Tennessee Valley Authority, 18 F.R.D. 152, 154-155 (M.D.Tenn.1955). The saving of time and expense in respect of jurors and witnesses--as well as the saving of time of judges and Court personnel--speaks forcefully against four separate trials.

The complaint was filed as recently as January 27, 1965; apparently only movant has answered; the time of one of the other defendants has been extended to March 9, 1965. It seems too early to order a joint trial at this stage but the disposition here made is without prejudice to an application by any party for a joint trial.

So ordered.

37 F.R.D. 473, 9 Fed.R.Serv.2d 20a.2, 1

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Legal Authority # 7
*In the Matter of Asbestos II Consolidated Pretrial,* 1989 WL 56181 (N.D.Ill. 1989)

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1989 WL 56181 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

▷
Matter of Asbestos II Consol. Pretrial
N.D.Ill.,1989.
Only the Westlaw citation is currently available.
    United States District Court, N.D. Illinois, Eastern
Division.
In the Matter of ASBESTOS II CONSOLIDATED
PRETRIAL.
**Nos. 86 C 1739, 89 C 452.**

May 10, 1989.

*MEMORANDUM OPINION*
KOCORAS, District Judge:
**\*1** This matter is before the court on defendants'
motions to (1) sever each plaintiff's claim on the
basis of misjoinder of party plaintiffs, and (2)
dismiss the strict liability in tort claims of certain
plaintiffs. For the following reasons, defendants'
motion to sever is granted and the motions to
dismiss are granted except as to plaintiffs Schnur
and Finch.

*DISCUSSION*

A. Motion to Sever

Plaintiffs claim that because all plaintiffs' and
decedents' claims are reasonably and logically
related, they arise out of the "same transactions or
occurrences" within the meaning of federal
permissive joinder rules. Rule 20(a) states in
pertinent part:

All persons may join in one action as plaintiffs if
they assert any right to relief jointly, severally, or in
the alternative in respect of or arising out of the
same transaction, occurrence, or series of
transactions or occurrences and if any question of
law or fact common to all these persons will arise in
the action.

Fed.R.Civ.Pro. 20(a). First there must be an
identity of "transactions" or "occurrences" or a "
series of transactions or occurrences." Only if this
inquiry is answered in the affirmative need the
second criteria, the presence of common questions
of law or fact, be addressed. The court finds that
the plaintiffs' claims do not arise from the same
transaction or occurrence, or series, thereof, and
accordingly, plaintiffs are misjoined under Rule
20(a).

Plaintiffs' assert that the evidence will show that all
plaintiffs and decedents were pipefitters in the same
union, they worked at common sites and were
exposed to defendants' asbestos products. These
facts do not establish a similar transaction or
occurrence, but rather tend to establish common
facts. Allegations of similar facts do not satisfy the
transaction or occurrence test. See generally, *Saval
v. BL, Ltd.* 710 F.2d 1027 (4th Cir.1983).

No allegation is made that the individual plaintiffs
and decedents suffered exposure to products of any
defendant at the same time nor at the same place.
Further, although plaintiffs and decedents all appear
to suffer from the same asbestos-related disease,
pleural asbestosis, all plaintiff's exposure differs as
to duration and magnitude. Distinct claims cannot
be properly joined under Rule 20 merely because
they have common theoretical underpinnings.
*Saval,* 710 F.2d at 1031.

Plaintiffs' concern for judicial economy in joining
these claims is duly recognized by the court, but
nevertheless, joinder does not alleviate the
confusion that would be characteristic of a trial
involving over 100 plaintiffs, each with an
individual claim based on unique facts, the very
situation that Rule 20 requirements are designed to
minimize. The court notes, however, that
numerous alternative trial structures are being
utilized to address the asbestos case overload in the
courts. See, T. Willging, *Trends in Asbestos
Litigation,* (Federal Judicial Center 1987). Such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1989 WL 56181 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

methods more appropriately address the plaintiffs' concerns rather than trying to join dissimilar claims in one case.

### B. Motion to Dismiss

**\*2** Defendant Owens-Corning Fiberglas Corporation ("Owens-Corning") filed motions to dismiss the strict liability in tort actions alleged by eight individual plaintiffs: Ernest Jacksetich (Count VII); Robert Himes, Sr. (Count VII); Henry Stuky (Count VII); Dale Finch (Count VII); Eugene Schnur (Count VII); Arthur Schiavo (Count VII); Thomas Lee Cochran, as Administrator of the estate of Edgar T. Cochran, deceased (Counts II and IV); and Dolly F. Downs, as administrator of the estate of Wendell L. Downs, deceased (Counts II and IV). Plaintiffs' answer discusses only the motions pertaining to plaintiffs Eugene Schnur and Dale Finch. Accordingly, the court grants the remaining six (6) motions to dismiss citing no objection.

Owens-Corning alleges that the strict liability in tort actions asserted by Schnur and Finch are barred by the Illinois Product Liability Statute of Repose. Ill.Rev.Stat. Ch. 110, ¶ 13-213(b)(d) (1987). In support, Owens-Corning states that since the complaint alleges that Schnur was last employed in 1977, more than 12 years has past since the claim was filed. The Statute of Repose provides an absolute limit of ten or twelve years from the date of first sale within which a plaintiff must file a strict products liability claim. After 10 or 12 years have passed, the plaintiff's claim is barred, regardless of the plaintiff's knowledge or lack of knowledge of the alleged injury. *Mc Leish v. Sony Corporation of America,* 152 Ill.App.3d 628, 504 N.E.2d 933, 935 (1st Dist.1987).

Plaintiff argues that discovery will show that Schnur left employment after January 19, 1977. Since the complaint was filed on January 19, 1989, it is not apparent that the claim violates the Statute of Repose. Viewing the facts in a light most favorable to the plaintiff, the court concludes that Schnur's strict liability claim should not be dismissed at this time.

Plaintiff Finch, it is alleged in the complaint, was last employed in 1977. Since plaintiff contends that 1986 is in fact the correct year in which Finch last worked, the motion to dismiss will be denied and plaintiff shall amend the complaint in a manner deemed appropriate for the exclusive purpose of correcting this typographical error.

### *CONCLUSION*

For the reasons stated, defendants' motion to sever is granted and the motions to dismiss strict liability in tort claims are granted except as to plaintiffs Schnur and Finch to whom said motions are denied.

It is so ordered.

N.D.Ill.,1989.
Matter of Asbestos II Consol. Pretrial
Not Reported in F.Supp., 1989 WL 56181 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.